1   W. JAMES YOUNG, Esq.
    c/o National Right to Work Legal
2        Defense Foundation, Inc.
    8001 Braddock Road, Suite 600
3   Springfield, Virginia 22160
    (703) 321-8510

    **FILED**

4
    STEVEN R. BURLINGHAM, Esq.
5   California Bar No. 88544
    Gary, Till & Burlingham

    NOV - 1 2005

6   5330 Madison Avenue, Suite F
    Sacramento, California 95841

    CLERK, U.S. DISTRICT COURT
    EASTERN DISTRICT OF CALIFORNIA

7   (916) 332-8122
    Facsimile — (916) 332-8153

    BY_____
        DEPUTY CLERK

8
    ATTORNEYS FOR PLAINTIFFS AND
9   THE CLASS THEY SEEK TO REPRESENT

10
                        UNITED STATES DISTRICT COURT
11                  FOR THE EASTERN DISTRICT OF CALIFORNIA

12
                                        **2:0 5   CV - 2 1 9 8 MCE KJM**
13
    DIANNE KNOX; WILLIAM L. BLAYLOCK; ROBERT        CASE NO. _____
14  A. CONOVER; EDWARD L. DOBROWOLSKI, JR.;
    KARYN GIL; THOMAS JACOB HASS; PATRICK           CLASS ACTION
15  JOHNSON; JON JUMPER; AND R. PAUL RICKER, ON
    BEHALF OF THEMSELVES AND THE CLASS THEY
16  SEEK TO REPRESENT,                              **PLAINTIFFS' VERIFIED CLASS
                                                    ACTION COMPLAINT**
17              Plaintiffs,

18  v.

19  STEVE WESTLY, Controller, State of California;
    AND CALIFORNIA STATE EMPLOYEES
20  ASSOCIATION, LOCAL 1000, SERVICE EMPLOYEES
    INTERNATIONAL UNION, AFL-CIO-CLC,

21              Defendants.

22

23

24                              **COMPLAINT**

25          1.      This is a civil rights, class action seeking immediate injunctive and declaratory relief,

26  and nominal and compensatory damages and/or restitution, to redress and prevent the deprivation,

27  through action by Defendants acting under color of state law, of Plaintiff public employees' rights,

28  privileges and immunities under the First and Fourteenth Amendments to the United States

**1**   Constitution.

**2**   2.   Specifically, this civil rights action seeks to prevent CSEA from increasing the amount
**3**   of money taken from the wages of public employees as dues or compulsory fees and using the
**4**   temporary assessment as an involuntary loan to defeat various California political propositions on the **8**
**5**   **November 2005** ballot, and to take other political or ideological actions which are contrary to the
**6**   beliefs and positions of the public employees.  These deductions have been and will continue to be
**7**   conducted in a manner which violates Plaintiffs' First and Fourteenth Amendment rights as set forth in
**8**   the United States Supreme Court's decisions establishing the procedures and safeguards, and limiting
**9**   the circumstances, under which the temporary assessment in dues and fees may constitutionally be
**10**  collected from public employees.  These safeguards include notice to all potential objectors of the
**11**  purpose(s) for which the temporary assessment is to be used and spent, and an appropriately justified
**12**  advance reduction or advance rebate in the amount of the temporary assessment used wholly for ballot
**13**  propositions, political activities and other nonbargaining activities.

**14**  3.   Once the employees' money is spent contrary to their wishes to affect: (1) the outcome
**15**  of the ballot propositions; (2) the Governor's programs; and (3) political or ideological matters, and for
**16**  other nonbargaining activities, the employees' First Amendment rights are irretrievably lost.
**17**  Accordingly, immediate injunctive relief is necessary to maintain the *status quo* and prevent the
**18**  irreparable injury and loss of the First Amendment rights of the employees and the class or classes they
**19**  seek to represent.

**20**

**21**                                 **JURISDICTION AND VENUE**

**22**  4.   This action arises under the Constitution and laws of the United States, particularly the
**23**  First, Fifth, and Fourteenth Amendments to the United States Constitution.  The jurisdiction of this
**24**  Court, therefore, is invoked under 28 U.S.C. § 1331.

**25**  5.   This is also an action under the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983, to
**26**  redress the deprivation, under color of state law, of rights, privileges and immunities secured to
**27**  Plaintiffs and class members by the Constitution of the United States, particularly the First, Fifth, and
**28**  Fourteenth Amendments thereto.  The jurisdiction of this Court, therefore, is invoked under 28 U.S.C.

1 § 1343(a)(3) & (4), pursuant to which this Court may grant: a) damages or restitution for the violation

2 of Plaintiffs' First and Fourteenth Amendment rights in the amount of the temporary assessment

3 unconstitutionally collected and used, plus interest; b) injunctive relief against the future collection or

4 spending of the temporary assessment; c) nominal damages for the violation of Plaintiffs' federally

5 protected rights; and d) reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

6       6.    This is also a case of actual controversy where Plaintiffs are seeking a declaration of

7 their rights under the Constitution of the United States. Under 28 U.S.C. §§ 2201 and 2202, this Court

8 may declare the rights of Plaintiffs and grant further necessary and proper relief based thereon,

9 including preliminary and permanent injunctive relief, pursuant to Rule 65, FED.R.CIV.P.

10       7.    **Venue:** Pursuant to 28 U.S.C. § 1391(b) and § 1392, venue is proper in this Court

11 because Defendants either reside and/or have offices and conduct their business in the judicial district

12 of the United States District Court for the Eastern District of California.

13

14 **PARTIES**

15       8.    Plaintiffs Dianne Knox, William L. Blaylock, Robert A. Conover, Edward L.

16 Dobrowolski, Jr., Karyn Gil, Thomas Jacob Hass, Patrick Johnson, Jon Jumper, and R. Paul Ricker

17 are, and were at all times mentioned herein, individuals employed by various instrumentalities of the

18 State of California. As such, they are "state employees" within the meaning of the Ralph C. Dills Act,

19 CAL. GOVT. CODE, § 3513(c). Plaintiffs are employed in a bargaining unit designated as "Bargaining

20 Unit 1," which is one bargaining unit of State employees among several represented, exclusively for

21 purposes of collective bargaining with their employer, by Defendant California State Employees

22 Association, Local 1000, Service Employees International Union, AFL-CIO, CLC (hereinafter

23 "CSEA" or "the union").

24           a.    Plaintiffs Knox, Blaylock, Dobrowolski, Gil, Hass, Johnson, and Jumper, are

25           not members of CSEA and have not, at any time material hereto, been members of CSEA

26           and/or its affiliates, and nevertheless have been and are subject to the automatic seizure of

27           agency fees, including the temporary assessment;

28           b.    Until on or after 1 October 2005, Plaintiff Conover was a member of CSEA

and/or its affiliates, and full union dues were deducted monthly from his wages; and

c. Plaintiff Ricker is, and has been at all times material hereto, a member of CSEA and/or its affiliates, and full union dues have been and continue to be deducted monthly from his wages.

9. Defendant Steven Westly (hereinafter "Westly") is the Controller of the State of California. As such, he is charged with the responsibility of issuing wages to employees of the State and/or its Departments, including Plaintiffs, and processing all deductions therefore, including for union dues and so-called "fair share" fees pursuant to "agency shop" agreements. He is sued in his official capacity.

10. Defendant California State Employees Association, Local 1000, Service Employees International Union, AFL-CIO, CLC ("CSEA" or "the union") is an "employee organization" as defined in the Ralph C. Dills Act, CAL. GOVT. CODE, § 3513(a), and has been recognized as the exclusive representative under said law for collective bargaining purposes of all State employees in Bargaining Units 1, 3, 4, 11, 14, 15, 17, 20, and 21. On information and belief, Defendant CSEA is a nonprofit corporation formed and existing under the laws of the State of California. CSEA is headquartered in the Eastern District of California, and conducts its business and operations throughout the State of California, and also within the Eastern District of California.

## CLASS ACTION ALLEGATIONS

11. Plaintiffs' action is a class action brought by Plaintiffs on their own behalf and on behalf of others similarly situated, pursuant to Rule 23(b)(1)(A) and (b)(2) and, alternatively, Rule 23(b)(3), FED.R.CIV.P. The class that Plaintiffs seek to represent consists of all former, current, and future State of California employees employed in Bargaining Units 1, 3, 4, 11, 14, 15, 17, 20, and 21 who are, have been, or will be represented exclusively for purposes of collective bargaining by CSEA, in three subclasses:

a. All individuals who pay compulsory fees to CSEA who are not members and who have, at one time or another, specifically objected to the use of their union fees for politics or other nonbargaining activities;

1          b.      All individuals who pay compulsory fees to CSEA who are not members and

2  who have never specifically objected to the use of their union fees for politics or other

3  nonbargaining activities; and

4          c.      All individuals who pay dues to CSEA as members.

5          12.    The number of persons in this class exceeds one hundred thousand. Upon information

6  and belief, the number of persons in each subclass is believed to number in the thousands, and may be

7  in the tens of thousands. These persons are therefore so numerous that joinder of all members of the

8  class and each subclass obviously is impractical.

9          13.    There are questions of law and fact common to all members of the class, to-wit,

10  whether Defendants may constitutionally and lawfully seize the temporary assessment from the wages

11  of the state employees which are to be used wholly for ballot propositions, political activities and other

12  nonbargaining activities without providing all of the procedural safeguards required by the First and

13  Fourteenth Amendments to the United States Constitution to be given all potential objectors.

14          14.    Plaintiffs' claims are typical of other members of the class and each subclass, who are

15  subject to the same deprivations of their rights by CSEA's collection and spending of the temporary

16  assessment, without providing the necessary constitutional safeguards and rights, as hereinafter

17  alleged.

18          15.    Plaintiffs can adequately represent the interests of other members of the class and each

19  subclass. Plaintiffs have no interests antagonistic to other members of the class and subclasses related

20  to the subject matter of this lawsuit, since all members of the class and each subclass are "potential

21  objectors" as that term was used by the United States Supreme Court in *Hudson*, 475 U.S. at 306, and

22  are entitled to notice and the procedures and safeguards required by the Constitution.

23          16.    Plaintiffs' attorneys are experienced in representing litigants before this Court.

24  Plaintiffs' counsel is provided *pro bono publico* by a national charitable legal aid organization, and

25  their lead counsel is experienced in representing nonunion employees in litigation, including class

26  actions, involving issues identical or similar to those raised in this action, and in fact, has litigated the

27  most recent leading cases addressing these issues in this Circuit. Plaintiffs' attorneys are well qualified

28  to be appointed class counsel by the Court.

1    17.    Because the unions' duty not to invade the First Amendment rights of the public

2  employees applies equally to all in the class and each subclass, the prosecution of separate actions by

3  individual class member public employees would create a risk of inconsistent or varying adjudications

4  which would establish incompatible standards of conduct for Defendants.

5    18.    Defendants have acted and threaten to continue to act on grounds generally applicable

6  to all members of the class and each subclass, thereby making appropriate final declaratory, injunctive

7  and other relief with regard to the class, and each subclass as a whole.

8    19.    The questions of law and fact common to the members of the class and each subclass

9  predominate over questions affecting only individual employees, in that the important and controlling

10  questions of law and fact are common to all State employees in the class and subclasses, *i.e.*, whether

11  Defendants have complied with the constitutional requirements for collecting from the employees the

12  temporary assessment earmarked wholly for ballot propositions, political activities and other

13  nonbargaining activities.

14    20.    A class action is superior to other available methods for the fair and efficient

15  adjudication of the controversy, inasmuch as the individual class member employees are deprived of

16  the same rights by Defendants' actions and threatened actions. The limited amount of money involved

17  in the case of each employee's claim would make it burdensome for the class, or each subclass, of

18  employees to maintain separate actions.

19

20                                              FACTS

21    21.    Acting in concert under color of state law — to-wit, the Ralph C. Dills Act, CAL.

22  GOVT. CODE § 3512, *et seq.* — the State of California has recognized Defendant CSEA as the

23  exclusive bargaining agent for the Plaintiffs and other State employees in bargaining units designated

24  as Bargaining Units 1 (Professional, Administrative, Financial, and Staff Services bargaining unit), 3

25  (Education and Library bargaining unit), 4 (Office and Allied workers bargaining unit), 11

26  (Engineering and Scientific Technician bargaining unit), 14 (Printing Trades bargaining unit), 15

27  (Allied Services bargaining unit), 17 (Registered Nurses bargaining unit), 20 (Medical and Social

28  Services Specialists bargaining unit), and 21 (Education, Library, and Maritime bargaining unit).

1 CSEA and the State of California have entered into a series of Memoranda of Understanding

2 ("MOUs") controlling the terms and conditions of employment for Plaintiffs and the class and

3 subclasses of State employees Plaintiffs seek to represent.

4     22.    Pursuant to the Ralph C. Dills Act, CAL. GOVT. CODE § 3512, the State and CSEA have

5 entered into MOUs governing these bargaining units, including a provision requiring that all State

6 employees in Bargaining Units 1, 3, 4, 11, 14, 15, 17, 20, and 21 join CSEA as formal union members,

7 or have deducted from their wages agency fees, as a condition of continued public employment.

8     23.    On or about 30 July 2005, the Local 1000 (CSEA) Council proposed an "Emergency

9 Temporary Assessment to Build a Political Fight-Back Fund" for "use[]d for a broad range of political

10 expenses, including television and radio advertising, direct mail, voter registration, voter education,

11 and get out the vote activities in our work sites and in our communities across California," specifically

12 stating that "The Fund will not be used for regular costs of the union -- such as office rent, staff

13 salaries or routine equipment replacement, etc." A true and correct copy of the motion to pass this

14 temporary assessment, taken from CSEA's website (http://www.seiu1000.org/august_fight_back_fund.

15 cfm) is attached hereto and incorporated herein as Exhibit A.

16     24.    On or about 27 August 2005, CSEA General Council delegates voted to impose a

17 "temporary dues increase (1/4th of 1 percent of salary)" or assessment, effective 1 September 2005, to

18 create what CSEA characterizes as "a Political Fight Back Fund to be used for advertising, mail, voter

19 registration and education, and get-out-the-vote activities...." *CSEA Unity*, September 2005, page 1 (a

20 true and correct copy of said letter is attached hereto and incorporated herein as Exhibit B).

21     25.    CSEA's temporary assessment, which actually ranges from 25% to 36% depending on

22 the job classification and monthly salary, began with the 30 September 2005, paycheck issued to State

23 employees, and is targeted primarily, if not wholly, at the defeat of certain ballot propositions in a

24 special election to be held on 8 November 2005, fighting, *inter alia*, the Governor's electoral and

25 political financing policies, and to support other political and nonbargaining actions. Specifically, the

26 temporary assessment will "be used specifically in the political arenas of California to defend and

27 advance the interests of members of Local 1000 and the important public services they provide," and

28 will be "used for a broad range of political expenses, including television and radio advertising, direct

1  mail, voter registration, voter education, and get out the vote activities in ... work sites and in ...

2  communities across California." CSEA has represented specifically that "The Fund will not be used

3  for regular costs of the union — such as office rent, staff salaries or routine equipment replacement,

4  etc.," and that this temporary assessment will generate approximately $12 million for CSEA's political

5  activities. Exhibit A.

6      26.    CSEA's temporary assessment began with the 30 September 2005 paychecks issued to

7  State employees. The normal $45.00 per month dues cap does not apply to this temporary assessment,

8  and monthly dues now range from $29.78 for a janitor to $61.25 for an education consultant. Union

9  dues in the amount of $66.77 was deducted from Plaintiff Conover's September paycheck.

10      27.    CSEA opposes Propositions 75 & 76. The Alliance for a Better California, a coalition

11  of the State's public employee labor unions, of which CSEA is a member which it actively supports,

12  also opposes Propositions 74, 77, & 78, and supports Propositions 79 & 80. CSEA has contributed to

13  the Alliance and other political committees opposing Propositions 75 & 76.

14      28.    Plaintiffs support some or all of the propositions CSEA opposes, oppose some or all of

15  the propositions CSEA supports, and/or do not believe that their dues or forced fees should be used on

16  any ballot proposition and other political and nonbargaining activities.

17      29.    Plaintiffs have a First Amendment right to prevent the temporary assessment from

18  being used for or against ballot propositions and other political and nonbargaining activities which

19  conflict with their own personal preferences.

20      30.    Plaintiffs also have a First Amendment right to adequate procedures which will, *inter*

21  *alia*, give the employees adequate advance notice of the political and other nonbargaining uses to

22  which the temporary assessment is targeted. Such notice would allow them to make an informed

23  decision on whether their union dues and/or agency fees are (or will be) used for political and other

24  nonbargaining activities which conflict with their own personal preferences so that they can prevent

25  the use of their moneys for ballot propositions and other political and nonbargaining activities that they

26  oppose. See *Teachers Local No. 1 v. Hudson*, 475 U.S. 292, 306-10 (1986).

27      31.    During the month of June 2005, CSEA sent a notice ("CSEA's 2005 Notice") to most

28  or all of its nonmember employees. CSEA did not send any such notice to its members. This notice

1  preceded the vote for a temporary assessment by approximately two-to-three months, contained no

2  notice that a political dues and fees increase would be included in the 2005-06 dues and fees, and

3  stated that "Dues are subject to change without further notice to fee payers." A true and correct copy

4  of said notice is attached hereto and incorporated herein as Exhibit C.

5      32.     CSEA's 2005 Notice set the agency fee to be seized from 1 July 2005, through 30 June

6  2006 ("2005-06 fiscal year"), at 99.1% of dues. CSEA's 2005 Notice also informed nonmembers that

7  a reduced agency fee of 56.35% of CSEA's annual dues, or 0.5635% of pay, would be charged to

8  nonmembers who objected to paying the full agency fee and requested a rebate pursuant to the

9  procedures and deadlines outlined in CSEA's 2005 Notice. The 56.35% is based on CSEA's actual

10  expenditures for the year ending 31 December 2004, in which CSEA calculated chargeable

11  expenditures to be 56.35% of its total expenditures.

12      33.     On or about 31 August 2005, CSEA sent another letter, addressed to "Local 1000

13  Members and Fair Share Fee Payers." As it affected union members, *inter alia*, said letter announced

14  the dues increase, and stated that "The $45 per month cap on our regular dues of 1% of gross pay will

15  continue in effect, but will not apply to this additional .0025 temporary increase." As it affected

16  nonmember objectors, *inter alia*, said letter announced that "Fair Share fees will rise by .002478 of

17  gross monthly salary." A true and correct copy of said letter is attached hereto and incorporated herein

18  as Exhibit D.

19      34.     Since 1 September 2005, the agency fee deducted from the wages of all nonmember

20  objectors by Westly and transmitted to CSEA for its spending has been increased by 0.2478% of

21  salary, a 24.78% - 35.75% or more increase of monthly fees paid. Thus, the actual reduced agency fee

22  charged objecting nonmembers in 2005-06 includes 99.12% of the 25% temporary assessment, which

23  increase has been imposed solely for nonchargeable political and ideological purposes, resulting in a

24  forced loan from them that will be spent on the ballot propositions and other political and

25  nonbargaining activities to which they object.

26      35.     Since 1 September 2005, the agency fee deducted from the wages of nonmembers

27  failing to object by Westly and transmitted to CSEA for its spending has been increased by 0.2478% of

28  salary, a 24.78% - 35.78% increase of monthly fees paid.

36.   Since 1 September 2005, the dues paid by union members and collected by CSEA for its spending has been increased by 0.25% of salary, a 25%-36.10% or more increase of monthly dues paid.

37.   Moreover, CSEA's pre-1 September 2005, spending on the ballot propositions and other political and nonbargaining activities facilitated by the temporary assessment will not be included in setting the new reduced agency fee percentage until 2006, more than six months after the initial seizures; and the 1 September through 8 November 2005, spending on the ballot propositions and other political and nonbargaining activities facilitated by the fee increase will not be included in setting the new reduced agency fee percentage until 2007, eighteen months later.

38.   CSEA's usual agency fee procedure allows CSEA to force nonmembers to loan it the increased fee amount to spend and use on the ballot propositions and other political and nonbargaining activities, which CSEA will not begin to "repay" for six months and not fully "repay" until eighteen months after the first seizures. In addition, CSEA's repayment of the forced loan is contingent upon the nonmember remaining employed by the State in a bargaining unit represented by CSEA, and objection in both of the subsequent years.

39.   In early September 2005, after receiving Exhibit D hereto, Plaintiff Dobrowolski called CSEA's Sacramento office, and was told to call its Riverside office. He did so, and left a message for Jodi Smith, area manager, asking that she call him back. Smith returned his call and stated that, even if Dobrowolski objected to the payment of the full agency fees, *via* a letter in June, there was nothing he could do about the September increase for the temporary assessment. She also stated that "we are in the fight of our lives," and that the temporary assessment was needed, and that there was nothing that could be done to stop CSEA's expenditure of the temporary assessment for political purposes.

40.   As a result of the timing of CSEA's increase in their dues and fees, the minimum procedures required by the First and Fourteenth Amendments to the United States Constitution, as explained in *Hudson*, have not been provided to the employees and the class they seek to represent, all of whom are potential objectors to CSEA's use of the increase in the dues and fees primarily, if not wholly, for ballot propositions, political and other nonbargaining purposes.

41.   Specifically, CSEA has not provided Plaintiffs Knox, Blaylock, Dobrowolski, Gil,

1   Hass, Johnson, Jumper, and other nonmember State employees with an opportunity to object to the use
2   of the fee increase on the ballot propositions, politics and other nonbargaining activities; and an
3   immediate refund or reduction of the increased fee amount. Absent such immediate procedural
4   protections, the nonmember State employees are forced to loan the increase in their fees to CSEA for
5   its use and spending on the ballot propositions, politics and other nonbargaining activities which they
6   oppose and which they cannot constitutionally be required to subsidize.

7   42.   CSEA has not provided Plaintiffs Conover and Ricker and the other member State
8   employees, who are potential objectors, with: (1) an opportunity to resign and, as nonmembers, raise
9   an objection to the use of the dues/fee increase on the ballot propositions, politics and other
10  nonbargaining activities; and (2) an immediate refund or reduction of the increased dues/fee amount.
11  Without such immediate procedural protections, the member State employees are forced to loan the
12  increase in their dues to the CSEA for its use and spending on the ballot propositions, politics and
13  other nonbargaining activities which the members oppose and which they cannot constitutionally be
14  required to subsidize.

15

16  **FIRST CLAIM FOR RELIEF:** *CONSTITUTIONALLY ADEQUATE PROCEDURES*

17  43.   The forgoing paragraphs are re-alleged.

18  44.   The First and Fourteenth Amendments to the United States Constitution require that
19  the procedures for the collection of compulsory union dues and fees be carefully tailored to limit the
20  infringement on the public employees' fundamental First Amendment rights to freedom of speech,
21  association, petition, belief and thought by facilitating the public employees' ability, as potential
22  objectors, to protect those rights, including the right not to have their moneys used and spent on ballot
23  propositions, political and other nonbargaining activities to which they object and the right not to have
24  their objection met by a forced loan, followed by a rebate months, if not years, later.

25  45.   Under color of state law, Defendants have collected and continue to collect an increase
26  in compulsory dues and fees which CSEA has targeted, and will use and spend primarily on the
27  upcoming ballot propositions election and for politics and other nonbargaining activities without first
28  providing the carefully tailored procedures required by the First and Fourteenth Amendments to the

**1** United States Constitution. This deprives the public employees of their constitutional right to due
**2** process and proper procedures.

**3**

**4**                    **SECOND CLAIM FOR RELIEF: FREE SPEECH**

**5** 46.    Paragraphs 1 through 42 are realleged.

**6** 47.    Under color of state law, Defendants collect and continue to collect an increase in
**7** compulsory dues and fees from the public employees which CSEA has targeted, and will use and
**8** spend primarily on the upcoming ballot propositions election and for other political and nonbargaining
**9** activities contrary to the public employees' political preferences.

**10** 48.    Without being provided with an immediate rebate of or reduction in the increase in dues
**11** and fees being used and spent on ballot propositions and other political and nonbargaining activities,
**12** the objecting public employees are being forced to loan the unions their money and are otherwise
**13** deprived of their right to free speech, free association and political autonomy under the First
**14** Amendment to the United States Constitution.

**15**

**16**                            **PRAYER FOR RELIEF**

**17** 49.    Unless immediately restrained by this Court, Defendants' seizure of the increase in dues
**18** and fees from the named Plaintiffs' and class members' wages has directly caused, and will continue to
**19** cause, Plaintiffs and the class members they seek to represent to suffer the irreparable injury that is
**20** inherent in the violation of First Amendment rights and for which there is no adequate remedy at law
**21** and has deprived and will continue to deprive them of portions of their wages without due process of
**22** law.

**23** WHEREFORE, the Plaintiffs request the following relief from this Court:

**24** **A.    Temporary Restraining Order and/or Preliminary Injunction:** Immediately issue,
**25** pending a hearing on Plaintiffs' prayer for permanent relief, a temporary restraining order and/or a
**26** preliminary injunction restraining Defendant CSEA, its officers, agents, assistants, successors,
**27** employees, attorneys, and all persons acting in concert or cooperating with it or at its direction or
**28** under its control, from accepting any payroll deductions or direct payment of the increase in union

1  dues and fees from the wages of any named Plaintiff and any of the class members they represent, from

2  disbursing any of the increase in union dues and fees still in its possession and/or control, and

3  requiring said Defendant to restore the *status quo* by placing any increase in dues and fees it has

4  received or will receive into the registry of the Court or a Court-supervised escrow account, until

5  further order of the Court.

6  **B.   Class Certification:** Enter an order, as soon as practical, certifying this case as a class

7  action consisting of the class of all individuals who pay compulsory dues or fees to Defendant CSEA,

8  as outlined in the three subclasses identified in ¶ 13, *supra*; and appointing Plaintiffs' counsel as class

9  counsel.

10  **C.   Declaratory Judgment:** Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201,

11  declaring:

12       1)     that the named Plaintiffs and class members have a constitutional right to an

13       advance "*Hudson*" notice of the temoprary assessment and increase in the dues and fees to be

14       used in the upcoming ballot proposition special election and for other politics;

15       2)     that the named Plaintiffs and class members have a constitutional right to

16       receive advance notice of how they can object to their temporary assement being used in the

17       upcoming ballot proposition special election and for other politics; and

18       3)     that the objectors have a constitutional right to prevent the unions from using

19       and spending the temporary assessment in the upcoming ballot proposition election and for

20       other politics and from being forced to provide the unions with a loan for political purposes.

21  **D.   Permanent Injunction:** Enter a permanent injunction which restrains Defendants,

22  their officers, agents, assistants, successors, employees, attorneys, and all persons acting in concert or

23  cooperating with them or at their direction or under their control, to place in escrow all of the money

24  which they have collected or received and will collect or receive from the Plaintiffs and class members

25  as a result of the temporary assessment, which CSEA has targeted wholly for ballot propositions,

26  political activities and other nonbargaining activities, into the registry of the Court or a Court-

27  supervised escrow account, until such time as the Court is satisfied that Defendants have provided all

28  the necessary pre-collection safeguards and procedures mandated by the Constitution

**1**   **E.**   **Damages:** Award each named Plaintiff and class member compensatory damages or

**2**   restitution from CSEA in the amount of the increase in the dues or fees collected and not previously

**3**   returned, with statutory interest, that has been spent on, or targeted for, ballot propositions, political

**4**   activities and other nonbargaining activities to which the Plaintiff and class member objects; and

**5**   nominal damages from the appropriate Defendant for its violations of the Plaintiffs' and class

**6**   members' rights under the First and Fourteenth Amendments to the United States Constitution.

**7**   **F.**   **Costs and Attorneys Fees:** Pursuant to the Civil Rights Attorneys' Fees Award Act of

**8**   1976, 42 U.S.C. § 1988, award the Plaintiffs their costs, including reasonable attorneys' fees, incurred

**9**   in the litigation of this case.

**10**   **G.**   **Other:** Grant the Plaintiffs such other and further legal or equitable relief as the Court

**11**   may deem just and proper.

**12**   DATED: _l_ November 2005

**13**
Respectfully submitted,

**14**

**15**
STEVEN R. BURLINGHAM, Esq.
California Bar No. 88544

**16**
Gary, Till & Burlingham
5330 Madison Avenue, Suite F

**17**
Sacramento, California 95841
(916) 332-8122

**18**
Facsimile — (916) 332-8153

**19**

**20**
W. JAMES YOUNG, Esq.
c/o National Right to Work Legal

**21**
Defense Foundation, Inc.
8001 Braddock Road, Suite 600

**22**
Springfield, Virginia 22160
(703) 321-8510

**23**

ATTORNEYS FOR PLAINTIFFS AND
**24**
THE CLASS THEY SEEK TO REPRESENT

**25**

**26**

**27**
N:\WP\California Cases\Knox.CA\Complaint.rev3.wpd
Monday, 31 October 2005, 16:57:50 PM

**28**

**July 30, 2005**

## Agenda Item:

**SUBJECT:** Emergency Temporary Assessment to Build a Political Fight-Back Fund
**SUBMITTED BY:** Local 1000 Special Defense Budget Committee
**RECOMMENDED ACTION:**

That the Local 1000 Council approve an emergency temporary assessment to increase the regular membership dues in an amount equal to .0025 (two and one-half tenths of one percent) of gross wages and an emergency temporary increase in the regular membership dues paid by permanent intermittent employees from $8 per month to $15 per month, with such increases remaining in effect during the pay periods between September 1, 2005 and December 31, 2006. The current dues structure of 1% of earnings to a maximum of $45 per month will continue in effect, but will not apply to this additional .0025 temporary increase.

These temporary emergency assessments are made necessary by political attacks on state employees and other public workers launched by Governor Schwarzenegger and his allies which threaten the wages, benefits and working conditions of Local 1000 members, and undermine the services they provide to the people of California.

The funds from this emergency temporary assessment will be used specifically in the political arenas of California to defend and advance the interests of members of Local 1000 and the important public services they provide.

### BACKGROUND:

The Political Fight-Back Fund will be used for a broad range of political expenses, including television and radio advertising, direct mail, voter registration, voter education, and get out the vote activities in our work sites and in our communities across California. The Fund will not be used for regular costs of the union -- such as office rent, staff salaries or routine equipment replacement, etc.

Governor Schwarzenegger's effort to pass Proposition 76, the Power Grab Initiative, and Proposition 75, the Silence Our Voice Initiative must be defeated in the November 8 Special Election. While our immediate focus is on these two propositions, we must also defeat the initiative to destroy our retirement system which the Governor has promised to put on the ballot in June 2006. We must also have the resources to fight for the interests of Local 1000 members in the November 2006 election.

**Proposition 76** gives the Governor exclusive power to declare a "fiscal emergency." With that power he can break any contract we negotiate, lay off state workers and make drastic cuts to schools, health care and other public services.

**Proposition 75** would effectively silence our political voices while doing nothing to limit the influence of corporate special interests who dump millions of dollars into the political and legislative process.

With public employee unions removed from the political arena, the Governor's special interest allies would launch another initiative to destroy our pensions in June 2006, and then, in November 2006, elect a governor and legislature committed to their anti-worker policies.

The Governor will raise over $100 million from special interest allies to support his campaigns. He is already spending $2.5 million per week on television alone – on ads which attack state workers. We must match this war chest in order to beat him.

Local 1000 did not seek this conflict, nor do we have the resources to fight and win it without passage of this motion. All of our allies are in the same position. That's why the Teachers, Firefighters, Correctional Officers and others have passed motions similar to this, and why all other public worker unions are in the process of raising the extraordinary funds needed to defeat the Governor. Each of us must do our part to turn back these initiatives which would allow the Governor to destroy our wages and benefits and even our jobs, and threaten the well-being of all Californians.

### ESTIMATED COST:
This motion would generate approximately $12 million.
**FUNDING SOURCE:**

**DIVISION ACTION:**


**PLAINTIFF'S EXHIBIT**
A

# UNITY

**California State Employees Association** ◄◉►

September 2005

## Two New Payroll Deductions for Local 1000 Members Start in October

Local 1000 staff is gearing up for lots of phone calls when two new payroll deductions for Local 1000 members and fair-share fee payers take effect next month.

First, Local 1000 delegates voted late last month for a temporary dues increase (1/4th of 1 percent of salary), effective October 1, to create a Political Fight Back Fund to be used for advertising, mail, voter registration and education, and get-out-the-vote activities.

Second, deductions for the new State Disability Insurance (SDI) program included in the Local 1000 contract will also begin next month.

For further information, go to the Local 1000 Web site: **www.seiu1000.org** or contact Local 1000 President Jim Hard at **jhard@seiu1000.org**.

## The Missing Link

Several Local 1000 members have contacted us to ask why the link to CSEA's home page: **www.calcsea.org** has been taken off of the Local 1000 Web site. They are upset because they no longer have direct access to information that's important to them as CSEA members.

Only Local 1000's leadership can answer that question. They made the decision to drop the link to CSEA's home page. You can ask Local 1000 President Jim Hard at **jhard@seiu1000.org** or his chief of staff, Michael Baratz, at **mbaratz@seiu1000.org** .

## Do as I Say, Not as I Do

Local 1000 is quite correct in fighting back against the blatant attempts by the Schwarzenegger Administration to prevent them from communicating with its members. The problem has been especially egregious at Caltrans, (see story p. 2). Officials there have blocked access and authorized the arrest of Local 1000 representatives and their supporters for asserting their legal and contractual right to talk to their members in the workplace and provide them with information about bargaining and other important issues.

## MYTH VS. FACT ABOUT PUBLIC EMPLOYEES

**MYTH:** California has too many public workers.

**FACT:** Adjusted for population, California has among the lowest numbers of state employees in the nation — and most work in education and public safety. In 2003, California ranked **47th** among the 50 states in the number of state employees per 10,000 people. During the same year, California ranked **42nd** among the 50 states in the combined number of state and local government workers per 10,000 residents.

Local 1000 also has complained about Caltrans officials removing union literature from break rooms and bulletin boards. Unfortunately, CSEA has the same problem at our own headquarters, just across the street. Someone is throwing away copies of *Unity* and CSEA fliers on Prop. 75 that are placed in our lobby for our members to read.

Could it be that someone from Caltrans is coming across the street and throwing away our fliers? Or is it a hypocrite from inside our own building? I guess we'll never know.

## Don't Forget to Vote in the CalPERS Election!

**KURATO SHIMADA** 
Vote for
Candidate
#3 on the ballot

**CHARLES VALDES** 
Vote for
Candidate
#5 on the ballot

You should already have received your ballot for the CalPERS Board of Administration election. Your ballot must be returned by October 3. CSEA has endorsed Charles Valdes, candidate #5 for position A, and Kurato Shimada, candidate #3 for position B. (see story p. 2)

In Solidarity,




PLAINTIFF'S
EXHIBIT
B

# CalPERS Pension Fund Achieves 12.7 Percent Return

The California Public Employees' Retirement System earned 12.7 percent on its investments in the last fiscal year, surpassing earnings projections of 7.75 percent for the second straight year.

The earnings also outpaced the S&P 500 for the same fiscal period, which ended June 30. The system's portfolio market value now stands at a record $189.9 billion.

"Strong investment performance, combined with its new employer rate-smoothing policy are factors that will result in more stable and potentially lower employer contribution rates in the future for the state of California and public agencies," said a CalPERS press release.

The system's new "smoothing" policy requires CalPERS to acknowledge in-vestment gains more slowly than it did in the past, spreading gains and losses over 15 years instead of three years.

CalPERS investments in real estate, private equity and international stocks were the main performance drivers during the year.

# Retired Division Urges Votes for Valdes and Shimada for CalPERS Board

The Retired Division urges all members to support Charles Valdes and Kurato Shimada for re-election to the CalPERS Board of Administration. Both men have also been endorsed by the CSEA Board of Directors.

Valdes has been a CalPERS Board member for 21 years. He has chaired the CalPERS Investment Committee for 13 years, watching the CalPERS fund grow from $23 billion when he was first elected to its current value of $189 billion. He is a past president of CSEA.

"Our retirement security is under attack," says Valdes. "Defined contribution (DC) would provide less for retirement and cost more. The average return on DC accounts is 7 percent, compared to 12 percent for defined benefit (DB) plans that CalPERS members have. I have the knowledge and experience to fight attempts to destroy our pension system."

Shimada, who is the former president of the California School Employees Association, has more than 15 years of experience in key positions on the Cal-PERS Board.

"Others would have to learn the issues. I already know them," said Shimada, who is also the chair of the Benefits and Program Committee and who previously chaired the Health Benefits Committee. "I am working hard to fight attempts to eliminate the current defined benefit pension system," he said. "We must ensure that our investments are stable, our system well managed, and our retirement and health benefits are protected."

Members should have received their ballot and candidate statements in the mail by now. Those who have not received their ballots by Sept. 23 should contact the CalPERS Board Elections Office at (916) 795- 3952 or (800) 794- 2297.

# They Can't Shut Us Out!

Hundreds of Local 1000 members, officers and staff participated in early morning rallies at Caltrans headquarters in Sacramento to challenge the department's refusal to allow us to hand out union material in the lobby, as permitted by the union contract, the Dills Act, and a number of court decisions. At least 10 participants were arrested and scores more signed up to risk arrest if necessary.

"The governor is trying to silence our voice here at Caltrans and at other agencies, just like he is trying to silence our voice at the ballot box," Local 1000 Vice President and Secretary-Treasurer Cathy Hackett told the crowd at one of the rallies.

Assembly Majority Whip Karen Bass (D-LA) and Assemblyman Mark Leno (D-SF) joined Local 1000 at a Caltrans rally; they also were denied admission to the building despite showing their legislative passes. "I was glad to stand and bear witness alongside SEIU and I will continue to support the efforts of union members to exercise their First Amendment right," Ms. Bass said.

Following one of the rallies members of the Carpenters, Electricians, Laborers and other construction unions refused to cross the Local 1000 informational picket line and went home, shutting down Caltrans' building remodeling job for the day. "These guys gave up a day's pay for us, and we will always remember their solidarity," said Local 1000 President Jim Hard.



*Assembly Majority Whip Karen Bass (D-LA) and Assemblyman Mark Leno (D-SF) try to enter the Caltrans headquarters in Sacramento.*

# ACSS-sponsored Bill Goes to Governor for Signature

ACSS-sponsored Assembly Bill 747, authored by Assemblyman Sam Blakeslee (R-San Luis Obispo), passed through both houses of the Legislature and was forwarded to Gov. Schwarzenegger Sept. 1. This bill will allow excluded employees, for catastrophic leave purposes, to receive leave credits (vacation, CTO, holiday or annual leave) from rank-and-file employees.

continued on p. 3

**ACSS**— *continued from p. 2*

As the law is currently written, excluded employees are permitted to transfer annual leave, vacation, compensating time off and holiday leave credits to an excluded employee or rank and file worker who has exhausted all his or her paid time off when a catastrophic illness or injury occurs to the recipient employee or a member of his or her family. But the law does not allow the excluded employee to receive these leave credits from a rank and file worker.

"This bill corrects what has been a legal discriminatory restriction that adversely affects state managers, supervisors and confidential employees," says ACSS President Tim Behrens.

The governor has until Oct. 9 to sign or veto this bill.

# CSEA Legislative Action Update

**Here's a listing of the status of legislation sponsored by CSEA or its affiliates:**

- AB 124 – Fully implementing state equal employment programs (Local 1000). Passed by the Legislature and sent to the governor.
- AB 529 – Procedural rights for CSU employees with disabilities (CSUEU). Awaiting final Senate action.
- AB 561 – Prison education (Local 1000). Passed by the Legislature and sent to the governor.
- AB 708 – Whistleblower protection for CSU employees (CSUEU). Passed by the Legislature and sent to the governor.
- AB 747 – Allows excluded employees to receive catastrophic leave credits from rank-and-file employees (ACSS). Passed by the legislature and sent to the governor.
- AB 1184 – Prohibits mandatory overtime for state nurses (Local 1000). Passed by the Legislature and sent to the governor.
- AB 1186 – Salary ranges for excluded employees (ACSS). Awaiting final Senate action.
- AB 1655 – Waiver of college fees and tuition for survivors of deceased law enforcement officers and firefighters (Local 1000). Awaiting final Senate action.

**The following bills have been carried over to the 2006 legislative session:**

- AB 786 – CSU employee identity theft (CSUEU).
- AB 844 – Increased postretirement death benefits (ACSS).
- AB 1019 – Enhanced bereavement leave for excluded employees (ACSS).
- AB 1026 – Fairer, more streamlined tax collections (Local 1000).
- AB 1369 – Memoranda of understanding for state bargaining units (Local 1000).
- SB 154 – Health care benefits for out-of-state employees and retirees (Retired Division).
- SB 336 – "Safety" category for Public Employees' Retirement System (ACSS).
- SB 669 – Memoranda of understanding for state bargaining units (Local 1000).
- SB 1091 – Retirees' vision care benefits (Retired Division).

# CSUEU NEWS

*The following is excerpted from an ad which ran this month in the student newspaper at California State University San Francisco:*

## Welcome back!

Do you like the looks of the campus grounds — the flowers, the well-kept lawns and trees? Then stop and say hello to a UNION worker!

The folks who keep the campus looking good are in Bargaining Unit 5, Calif. State University Employees Union, SEIU 2579, CSEA. These same Unit 5 folks recycle our paper and soda cans and keep our school and work environment clean and beautiful.

SFSU is a UNION campus. There are eight unions on campus divided into 11 bargaining units (BUs) of job categories. CSUEU represents four of the 11 BUs: Unit 2 (health care workers; nurses, lab technicians, researchers and medical record technicians), Unit 5 (operations workers: custodians, laborers and grounds workers), Unit 7 (clerical and administrative workers: library staff, office assistants, student services counter workers, payroll specialists, mail processors, telephone operators and financial aid analysts), and Unit 9 (technical support workers: office managers; lab, computer, stage, and research technicians; public affairs specialists and graphic artists).

These are a few among the many staff who serve you every day. To get anything done on this campus, you come into contact with a UNION worker. Wherever you go on campus, UNION workers serve you — whether out in front or behind the scenes. We support and make possible your educational goals. When you graduate, get organized and make it a UNION job.

Unity • 3

# CSEA MEETING SCHEDULE - Revised

## 2005

### September

| | |
|---|---|
| 17 | Region VII Mock General Council<br>Hometown Buffet 10 a.m. – 2 p.m.<br>2670 El Camino Real, Santa Clara |
| 19 | Chapter 2, 15 & 165 Mock General Council<br>Sierra Senior Center, Sacramento 10 a.m. |
| 22 | Region IX GC Preview<br>Nielsen's Restaurant, Tulare |
| 24 | Region XI Mock General Council<br>Sizzler, 15252 Rosecrans Ave, 2 p.m.<br>La Mirada |
| 24 | Region XIII Mock General Council<br>Marie Callender's 10 a.m.<br>5980 Avenida Encinas, Carlsbad |
| 24 | **\*Region 12:30-3:30 p.m.<br>Hutton Center, 660 Colton Ave.<br>Colton** |

### October

| | |
|---|---|
| 1 | **Region VIII Meeting<br>The Spaghetti Factory 12 Noon – 4 p.m.<br>2702 W. March Lane, Stockton** |
| 4 | Rosh Hashanah |
| 5 | CSEA Board of Directors Executive Session (C) |
| 6 | 3rd CSEA Board of Directors Meeting (O)<br>Hilton Anaheim<br>(714) 750-4321 (9/06/05)\*\* |
| 7 | SEIU Local 1000 Division Council (O)<br>Hilton Anaheim (9/6/05)\*\* |
| 7 | CSEA Committee Meetings |
| 8-10 | CSEA 63rd General Council (O)<br>Hilton Anaheim<br>(714) 750-4321 (9/06/05)\*\*\* |
| 10 | Columbus Day Holiday |
| 13 | Yom Kippur |

### November

| | |
|---|---|
| 5-6 | CSUEU Council Meeting (O)<br>Manhattan Beach Marriott<br>(310) 546-7511 (10/5/05)\*\* |
| 8 | Election Day |
| 11 | Veterans' Day Holiday |
| 24-25 | Thanksgiving Holiday |

### December

| | |
|---|---|
| 25 | Christmas Day |

## 2006

### February

| | |
|---|---|
| 24-26 | ACSS Board of Directors<br>Hilton Costa Mesa<br>(714) 540-7000 (2/1/06)\*\* |
| 24 | Retired Division, Inc. Executive Session<br>Retired Division, Inc. President's Forum |
| 25-26 | Retired Division, Inc. Board of Directors Meeting<br>Hilton Sacramento Arden West<br>(916) 922-4700 (2/1/06)\*\* |

### May

| | |
|---|---|
| 19 | Retired Division, Inc. Executive Session<br>Retired Division, Inc. President's Forum |
| 20-21 | Retired Division, Inc. Board of Directors Meeting<br>Hilton Ontario Airport<br>(909) 980-0400 (4/19/06)\*\* |

### October

| | |
|---|---|
| 13 | Retired Division, Inc. Executive Session<br>Retired Division, Inc. President's Forum |
| 14-15 | Retired Division, Inc. Board of Directors Meeting<br>Hilton Costa Mesa<br>(714) 540-7000 (9/13/06)\*\* |

Contact Marie Steuber at (916) 326-4245 or msteuber@calcsea.org to submit information for the calendar.

(O) indicates open meeting; (C) indicates closed meeting
**\*Indicates new event.**
\*\*Indicates the cut-off date for hotel reservations at CSEA's negotiated rate. After the date shown, CSEA's room rate will no longer be available, and the hotel may be sold out.
9/9/05

\*\*\*General Council reservations can be made by reservation form only – call-in reservations will not be accepted.

Unity • 4



Notice to Fair Share Fee Payers

Dear Fair Share Fee Payer:

I'm writing to encourage you to become a member of our union, SEIU LOCAL 1000. I am surprised at how often I am told by workers that they believe they are union members because there is a deduction taken from their payroll check, when in fact, they are paying a fee for services. Our records indicate that you are not a union member and that you are paying a service fee. We would like to strongly urge you to become a member of the union at this time.

As a member, you'll enjoy the benefits of membership that are not available to you as a fair share fee payer. You'll have the right to participate fully in the internal activities of the union, which include the ability to vote in elections pertinent to your District Labor Council (such as officers and stewards) or the Local (local officers, dues, etc.) You will also be eligible to utilize the benefits offered by Service Employees International Union Local 1000 and CSEA.

Benefits include the SEIU Union Plus Mortgage and Real Estate Program, Unsecured Loan Program, legal services for personal matters, the SEIU MasterCard with no annual fee and a competitive rate, and several types of insurance plans. CSEA's member benefits include a wide range of insurance products, financial and legal services, discount entertainment tickets and travel services. There are many additional discounts and services provided to our members. However, the most significant benefit of a strong membership is strength at the bargaining table when we negotiate your contract. You should be aware that the union security clause contained in your contract was negotiated and ratified by your coworkers who are members so that everyone who benefits from the collective bargaining process shares in its cost. The support of its members is what helps the Union provide you with better wages, benefits and working conditions.

If you want to become a member of Local 1000, just fill out the enclosed membership application and send it back to us. We will process you're application and send you information on your District Labor Council, the Local, and the services and benefits to which you are entitled

If you do not wish to join the union, however, California law permits collective bargaining agreements between the State of California and the SEIU Local 1000 that authorize the State Controller to deduct a fair share fee from the salary or wages of all SEIU LOCAL 1000 nonmembers of the bargaining units for which SEIU LOCAL 1000 is the exclusive representative. The fees are remitted to SEIU LOCAL 1000 on a monthly basis and are to be used to support SEIU Local 1000's work on behalf of fee payers and fellow employees with regard to their employment relations with the state. This notice and report are applicable for fair share fees collected by SEIU LOCAL 1000 for the period July 1, 2005 through June 30, 2006.

In Solidarity

*Jim Hard*

Jim Hard
President Local 1000

PLAINTIFF'S
EXHIBIT
C

## HOOD& STRONG LLP

Certified Public Accountants
Business Advisors

60 Spear Street
Suite 600
San Francisco
CA 94105

415.781.0900
fax 415.421.2976

San Francisco
Menlo Park

## Independent Auditors' Report

THE BOARD OF DIRECTORS
UNION OF CALIFORNIA STATE WORKERS
S.E.I.U. LOCAL 1000
Sacramento, California

We have audited the accompanying Statement of Operating Expenses by Activity and the Allocation Between Chargeable, Non-Chargeable, and Member-Only Benefits Expense (the Financial Statement) for the UNION OF CALIFORNIA STATE WORKERS S.E.I.U. LOCAL 1000 (the Local) for the year ended December 31, 2004. This statement is the responsibility of the Local's management. Our responsibility is to express an opinion on this statement based on our audit.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America. These standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statement. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

The operating expenses reflected in the Financial Statement are based on the operating expenses of the Local for the year ended December 31, 2004, with regard to the accounting policies based in Note 1. The allocation of operating expenses between chargeable, non-chargeable and member-only benefits expense is based on the definitions and significant factors and assumptions described in Note 3. The accompanying statement was prepared for the purpose of determining the fair share cost of services rendered by the Local for employees who are represented by, but not members of, the Local. The accompanying statement is not intended to be a complete presentation of the Local's financial statements.

In our opinion, the Financial Statement presents fairly, in all material respects, the operating expenses of the Local for the year ended December 31, 2004 and the allocation of operating expenses between chargeable, non-chargeable and member-only benefits expense, on the basis of the definitions and significant factors and assumptions described in Note 3, on the basis of accounting as discussed in Note 1.

This report is intended solely for the information and use of the Local and its agency fee payers and is not intended to be and should not be used by anyone other than these specified parties.

*Hood & Strong LLP*

April 25, 2005

1

---

**Union of California State Workers**
**S.E.I.U. Local 1000**

**Statement of Operating Expenses By Activity and the Allocation of**
**Expenses Between Chargeable, Non-Chargeable, and Member-Only Benefits Expense**

Year Ended December 31, 2004

| Activity Code | Activity | Total Expenses | Chargeable Expenses | Non-Chargeable Expenses | Member Only Benefits Expense |
|---|---|---|---|---|---|
| 100 | Contract Proposals, Negotiations and Ratification | $ 968,928 | $ 968,928 | | |
| 110/114 | Contract Administration, Enforcement and Grievance Adjustment | 8,110,748 | 8,110,748 | | |
| | Representation Before Governmental Boards or Agencies: | | | | |
| 120 | Disciplinary matters | 780,748 | 780,748 | | |
| 121 | Contracting Out | 136,716 | 136,716 | | |
| 122/123 | SPB: Other matters, complaints and appeals | 119,740 | $ 119,740 | | |
| 124/125 | PERB: Unfair labor practices | 75,509 | 75,509 | | |
| 126/127 | PERB: Other matters | 2,980 | 2,980 | | |
| 128 | PERS matters | 13,561 | 13,561 | | |
| 129 | State licensing board matters | 229 | | $ 229 | |
| 130 | Board of control matters | 757 | | 757 | |
| 131 | Unemployment Ins./Workers Comp. | 865 | | 865 | |
| 132 | Discrimination matters | 156,129 | 156,129 | | |
| 133 | U.S. Dept. of Labor: FLSA matters | 755 | | 755 | |
| 133 | Other state agency or board matters | 6,452 | | 6,452 | |
| | Litigation: | | | | |
| 140 | Contracting out litigation | 7,203 | 7,203 | | |
| 141 | Discrimination litigation | 18,034 | 18,034 | | |
| 142 | Other litigation on behalf of Local-represented employees in the Local which involves wages, hours, benefits, working conditions or other employee rights | 151,343 | 151,343 | | |
| 143 | Fair Share Fee litigation and arbitration | 19,011 | 19,011 | | |
| 144 | Other litigation which does not involve the wages, hours, benefits, working conditions or other employee rights of Local-represented employees | 97,854 | | 97,854 | |
| 150 | Conferences, discussion or background reading concerning wages, hours, employee rights, representational skills, etc. | 467,308 | 467,308 | | |
| 179 | Organizing in new units | 1,189 | | 1,189 | |
| 189 | Membership Recruitment | 163,792 | | 163,792 | |
| 190 | Political Education | 444,829 | | 444,829 | |
| 209 | Community Service/Charitable Activities | 46,125 | | 46,125 | |
| 210 | Other Activity (Job Related) | 63,985 | 63,985 | | |
| 211 | Other Activity (Non-Job Related) | 20,091 | | 20,091 | |
| 220-226 | Political Activity and CSEA-MAC | | | | |

The accompanying notes are an integral part of this statement.

2

**Union of California State Workers**
**S.E.I.U. Local 1000**

Statement of Operating Expenses By Activity and the Allocation of
Expenses Between Chargeable, Non-Chargeable, and Member-Only Benefits Expense

Year Ended December 31, 2004

| Activity Code | Activity | Total Expenses | Chargeable Expenses | Non-Chargeable Expenses | Member-Only Benefits Expense |
|---|---|---|---|---|---|
| 245-248 | Activities | 1,139,841 | | 1,139,841 | |
| | **Communications:** | | | | |
| 230 | Bargaining unit and corporate publications | 99,671 | 59,673 | 39,998 | |
| 231 | Newsletter, leadership letters, and other communiques | 48,966 | 29,316 | 19,650 | |
| 232 | Public and media relations | 62,201 | 37,240 | 24,961 | |
| 233 | Other publications (Job Related) | 133,123 | 79,701 | 53,422 | |
| 234 | Other publications (Non-Job Related) | 814 | | 814 | |
| 236 | Website | 79,386 | 47,528 | 31,858 | |
| | **Legislative:** | | | | |
| 240 | Introduced, supported and opposed legislation | 100,807 | 100,897 | | |
| 242 | Budgetary legislation | (3,989) | (3,989) | | |
| 243 | Screening and watching legislation | 41,769 | | 41,769 | |
| 244 | Legislative activities not tied to particular legislation | 123,842 | | 123,842 | |
| | **Meetings and Governance:** | | | | |
| 259 | General Council | 106,288 | 106,288 | | |
| 251 | Board and officer meetings and activities | 426,163 | 426,163 | | |
| 252 | Conference and BUC meetings and activities | 1,604,986 | 1,604,986 | | |
| 253 | Committee meetings - general subject matter | 15,994 | 15,994 | | |
| 254 | DLC/Region meetings, administration and leadership training | 848,892 | 508,232 | 340,660 | $ 62,818 |
| 255 | Internal disputes and election protests | 19,830 | 10,839 | | |
| 256/257 | SEIU and other labor affiliate meetings and activities | 16,453,257 | 3,508,505 | 12,944,752 | 10,778 |
| 258 | Other meetings or activities regarding Local governance | 87,939 | 87,939 | | |
| | **Staff and Local Administrative Activities:** | | | | |
| 260 | General administration | 1,083,070 | 895,533 | 189,537 | 3,249 |
| 261 | Accounting/financial management | 1,280,503 | 1,056,415 | 224,088 | 3,842 |
| 262 | Fair Share Fee administration | 76,157 | 76,157 | | |
| 263 | Other administrative expenses/office and equipment services | 1,942,315 | 1,602,410 | 339,905 | 5,827 |
| | **Member-Only Benefits:** | | | | |

The accompanying notes are an integral part of this statement.

3

---

**Union of California State Workers**
**S.E.I.U. Local 1000**

Statement of Operating Expenses By Activity and the Allocation of
Expenses Between Chargeable, Non-Chargeable, and Member-Only Benefits Expense

Year Ended December 31, 2004

| Activity Code | Activity | Total Expenses | Chargeable Expenses | Non-Chargeable Expenses | Member-Only Benefits Expense |
|---|---|---|---|---|---|
| 270 | Member death benefits | 217,220 | | 217,220 | 217,220 |
| 271/282 | Member-only insurance benefits | 17,776 | | 17,776 | 17,776 |
| | Total operating expenses | $ 37,872,693 | $ 21,339,671 | $ 16,531,922 | $ 321,54? |
| | | 100.00% | 56.35% | 43.65% | 0.8? |

**Reconciliation of Total Expenses to**
**Audited Financial Statement Expenses**

Total Expenses Above | $ 37,872,693

Expenses included above, but netted against
revenue in audited financial statement:

| Chapter administration | (734,192) |
| Chapter forfeits (net of grants) | 10,809 |
| Dues deduction processing fee | (121,988) |

Financial statement revenue, netted
against expenses above:

| SEIU International rebates | 4,087,864 |
| Other income | 33,314 |
| Revenue credited to Local 1000 in the central support billing | (86,794) |

Other reconciling items:

| Prior year per capita taxes paid during 2004 | (6,337,673) |

**Audited Financial Statement Expenses** | $ 34,724,033

The accompanying notes are an integral part of this statement.

4

**Union of California State Workers**
**S.E.I.U. Local 1000**

Notes to Statement of Operating Expenses by Activity and the
Allocation of Expenses between Chargeable, Non-Chargeable and Member-Only Benefits Expense
Year Ended December 31, 2004

### Note 1 - Summary of Significant Accounting Policies:

**a. Nature and Purpose of the Local**

The purpose of the Union of California State Workers S.E.I.U. Local 1000 (the Local) is to represent employees and retired employees of the State of California in the following matters: salary, benefits and working conditions, assistance in filing and pursuing employee grievances, legal representation on both an individual and class basis, technical assistance in matters of job classification, and legislative advocacy in support of programs beneficial to state employees and retirees.

The Local represents State of California Bargaining Units 1, 3, 4, 11, 14, 15, 17, 20 and 21.

**b. Affiliation**

On January 23, 2004, the Local entered into an affiliation agreement with the Service Employees International Union, AFL-CIO, CLC. The Local has been designated as "Union of California State Workers Local 1000, SEIU, AFL-CIO." The Local pays per capita taxes to SEIU International.

The Local is also affiliated with the California State Employees Association (the Association). The Local reimburses the Association for its allocated share of Central Support costs.

**c. Basis of Presentation**

The accompanying statement was prepared for the purpose of determining the fair share cost of services rendered by the Local for employees represented by, but not members of, the Local. The accompanying statement is not intended to be a complete presentation of the Local's financial position, changes in its net assets, or its cash flows in accordance with accounting principles generally accepted in the United States.

**d. Basis of Accounting**

The books of account and the financial statements of the Local reflect the accrual basis of accounting in accordance with accounting principles generally accepted in the United States. The amounts included in the accompanying statement are adjusted to a modified accrual basis as shown on page 4. The expenses detailed herein are from general operating net assets and do not include expenses from separate segregated net assets.

5

**Union of California State Workers**
**S.E.I.U. Local 1000**

Notes to Statement of Operating Expenses by Activity and the
Allocation of Expenses between Chargeable, Non-Chargeable and Member-Only Benefits Expense
Year Ended December 31, 2004

**e. Property and Equipment**

Depreciation expense is computed using the straight-line method over the estimated useful life of the assets ranging from three to fifteen years.

**f. Federal and State Income Taxes**

The Local is organized pursuant to the General Non-Profit Law of the State of California and is exempt from State and Federal income taxes under I.R.C. 501(c)(5) and California Revenue and Taxation Code Section 23701A.

**g. Estimates**

The preparation of financial statements in conformity with generally accepted accounting principles requires management to make estimates and assumptions that affect certain reported amounts and disclosures. Accordingly, actual results could differ from those estimates.

**h. Background - Non-Member Fees**

In 1986, the United States Supreme Court issued a decision regarding certain procedures that must be followed by a local union that is collecting fair share fees from non-members under a collective bargaining agreement with a public employer. In Chicago Teachers Union vs. Hudson, the United States Supreme Court reaffirmed the constitutionality of such fair share fee agreements, originally upheld in Abood vs. Detroit Board of Education. In another earlier case, Ellis vs. Railway Clerks, the United States Supreme Court had held that certain union expenditures could be charged to fair share fee payers, but that certain others could not be charged.

In 1988, the United States Supreme Court issued a decision holding that unions covered under the National Labor Relations Act (NLRA) may not charge non-members fees for nonrepresentational activities when the non-members are covered by collective bargaining agreements and object to such fees for nonrepresentational activities. This decision, known as Communications Workers of America vs. Beck, applies to the standard union shop, where the board and courts have long held that any bargaining unit employee may opt to be classified as a "financial core status employee" if he/she does not wish to join the union.

6

Union of California State Workers
S.E.I.U. Local 1000

Notes to Statement of Operating Expenses by Activity and the
Allocation of Expenses between Chargeable, Non-Chargeable and Member-Only Benefits Expense
Year Ended December 31, 2004

## Note 2 –

**Definitions:**

This statement sets forth the Local's activities and the expenditures associated with each activity. The numbering of each activity is from a coding system used by the Local to keep track of the time and expenses associated with each activity. Following each activity is a brief description of the nature of that activity and the type of expenditures included. These activities are grouped into three categories for this report: a) those activities determined by the Local to be fully chargeable for all fee payers, b) those activities determined by the Local to be entirely non-chargeable to objecting fee payers, c) those activities determined by the Local to be partly chargeable and partly non-chargeable to fee payers.

### a. Chargeable Expenses

*100 Contract Proposals, Negotiations and Ratification*

This activity encompasses the development, presentation and ratification by employees of contract proposals. Such activity includes: formulation of bargaining goals, priorities and proposals, together with related research and drafting of supporting arguments; Bargaining Unit Council and other meetings devoted to discussion of contract proposals, negotiations or ratification; the process of receiving input from bargaining unit employees through surveys, worksite meetings or other means regarding matters to be negotiated, including worksite committee development and meetings in support of bargaining; education, research and training related to contract proposals, negotiations, or ratification, including training and orientation of Bargaining Unit Council members; negotiation of contracts; participation in any impasse procedures related to contract negotiations (i.e., fact finding, mediation or arbitration); ratification by the bargaining units; preparation and distribution of material such as flyers, draft contracts, reports and other publicity work (both within and outside the Local, including public and media relations) regarding the status of contract proposals, negotiations and ratification; distribution of leaflets, demonstrations and job actions related to contract proposals, negotiations and ratification; and litigation arising out of activities in support of the Local's position on contract proposals, negotiations or ratification.

*110/114 Contract Administration, Enforcement and Grievance Adjustment*

Activities that relate to administration and enforcement of the contract once negotiated include all aspects of handling grievances or arbitrations under the contract, including preparation, participation and follow-up, internal Local arbitration appeals, and any appeals or other proceeding (including court litigation) involving enforcement of the contract; all aspects of the job steward program, including steward training supervision, activities and meetings; providing information to employees through worksite meetings, mailers or otherwise about their rights under the contract, the grievance arbitration process, and problems or questions about contract administration issues; handling employees' questions and complaints on contract rights, grievances and other contract administration issues; meetings, phone calls and correspondence with representatives of the State employer to discuss the interpretation of the contract generally or to discuss particular grievances or problems under the contract; BUC and other meetings devoted to discussion of problems relating to administration or implementation of the contract; and education, research and training related to grievance handling and other aspects of contract administration.

*120 Disciplinary Matters*

Representation of employees in disciplinary matters arising in the course of their employment.

*121/140 Contracting Out/Contracting Out Litigation*

Action by Local representatives to prevent the State of California from eliminating or reducing state jobs in Local-represented units by entering into contracts with private employers for services available through state government employees.

*122/123 SPB: Other Matters, Complaints and Appeals*

Representation of employees before the State Personnel Board on such matters as examination appeals, classification disputes, appeals regarding voided appointments, and other merit-related appeals.

*124/125 PERB: Unfair Labor Practices*

The pursuit and defense of unfair labor practice charges before the Public Employment Relations Board (PERB) that arise from alleged violation of such matters as defined in statute.

*126/127 PERB: Other Matters*

Representation before PERB on such matters as petitions regarding the composition of units, unit modification or severance proposals, election challenges and injunctive relief

7

8

**Union of California State Workers**
**S.E.I.U. Local 1000**

Notes to Statement of Operating Expenses by Activity and the
Allocation of Expenses between Chargeable, Non-Chargeable and Member-Only Benefits Expense
Year Ended December 31, 2004

*128 PERS Matters*

Representation before the Public Employees Retirement System regarding health and welfare plans of state employees and on matters related to the funding of current and future retirement benefits.

*132/141 Discrimination Matters/Discrimination Litigation*

Representation of employees charging work-related discrimination.

*142 Other Litigation on Behalf of Local-Represented Employees or the Local Which Involves Wages, Hours, Benefits, Working Conditions or Other Employee Rights*

This activity includes litigation on matters such as the prevention of transfers of funds from the Public Employees Retirement System to the State of California general operating account. This litigation also involves representation of individual unit members before courts of competent jurisdiction in defense of their wages, hours and working conditions, in instances where informal or administrative remedies are unavailable or have been exhausted.

*143 Fair Share Fee Litigation and Arbitration*

This activity includes litigation regarding challenges to the Local's right to collect fees, and annual arbitrations regarding the amount of the fees the Local charges to fee payers who have filed objections to paying for any activities not germane to collective bargaining.

*150 Conferences, Discussions or Background Reading Concerning Wages, Hours, Employee Rights, Representational Skills, etc.*

This activity includes all readings, meetings, conferences, or other activities not covered by another activity which provide background information or education as opposed to research on or development of specific proposals related to wages, hours, benefits, working conditions, employee rights, industry developments in public sector employment or labor relations, representational skills, or other matters pertinent to improving the working lives of Local-represented employees. This activity also includes general professional reading by staff, and the purchase and maintenance of publications used in such representation, such as the research and law libraries.

*210 Other Activity (Job Related)*

This is a miscellaneous category that is used only in the rare case when none of the other more descriptive categories apply to an activity involving wages, hours, benefits, working conditions, employee rights or other matters pertinent to improving the working lives of Local-represented employees.

---

**Union of California State Workers**
**S.E.I.U. Local 1000**

Notes to Statement of Operating Expenses by Activity and the
Allocation of Expenses between Chargeable, Non-Chargeable and Member-Only Benefits Expense
Year Ended December 31, 2004

*240 Introduced, Supported and Opposed Legislation*

Research, analysis, writing, meetings, testimony or other legislative advocacy regarding legislation introduced, supported or opposed by the Local which relates to the wages, hours, benefits, working conditions, bargaining rights or other employee rights of or for some groups of Local-represented employees. Examples include legislation on contracting out, statutory rights of Local-represented employees, employee health and safety matters, and revisions to the bargaining process under HEERA.

*242 Budgetary Legislation*

Research analysis, writing, meetings, testimony or other legislative advocacy regarding budgetary legislation. Other legislative expenditures are in activities 240, 243 and 250.

*250 General Council*

Every two years, delegates from the Association's affiliates (including the Local) plus ex-officio delegates, meet as a General Council to elect statewide officers for the next two years, adopt budgets and consider resolutions regarding the Association's governance, goals, objectives and procedures.

*251 Board and Officer Meetings and Activities*

All aspects of preparation for, participation in and follow-up to Association Board of Directors and officer elections, meetings and other activities not concerned with a single subject matter covered by another activity.

*252 Corporate and BUC Meetings and Activities*

All aspects of preparation for, participation in and follow-up to Corporate and Bargaining Unit Council elections, meetings and other activities not concerned with a single subject matter covered by another activity.

*253 Committee Meetings - General Subject Matter*

All aspects of preparation for, participation in and follow-up to meetings of standing or ad hoc committees of the Board of Directors or of the Local that involve a general subject matter not covered by another activity and are concerned with wages, hours, benefits, working conditions or other employee rights of Local-represented employees.

*255 Internal Disputes and Election Protests*

Resolution of internal disputes, grievances and election protests, including costs of the Hearing Officers Panel.

Union of California State Workers
S.E.I.U. Local 1000

Notes to Statement of Operating Expenses by Activity and the
Allocation of Expenses between Chargeable, Non-Chargeable and Member-Only Benefits Expense
Year Ended December 31, 2004

*258 Other Meetings or Activities Regarding Local Governance*

Meetings or activities related to Local governance that are not covered by other activities. This includes preparation for and participation in the follow-up to meetings of committees such as Bylaws, Policies and Procedures, and Operations; legal advice or other work regarding the Local's corporate status, bylaws and other governance matters; and meetings of Local-represented employees with Local board members, officers or other Local officials that are not on a specific subject covered by another activity.

*262 Fair Share Fee Administration*

b. **Non-Chargeable Expenses**

*129 State Licensing Board Matters*

*130 Board of Control Matters*

*131 Unemployment Insurance/Workers Compensation*

*134/135/136 Other Federal or State Agency or Board Matters*

Advice, consultation and inquiry of agencies on employment-related matters not covered in other activities.

*144 Other Litigation Which Does Not Involve the Wages, Hours, Benefits, Working Conditions or Other Employee Rights of Local-Represented Employees*

Litigation not chargeable to fee payers.

*170 Organizing New Units*

*180 Membership Recruitment*

All activities to obtain new members in bargaining units or divisions that are currently represented by the Local, including the cost of meetings held principally for that purpose as well as the costs of recruitment material.

*190 Political Education*

Costs related to education of members on political matters not chargeable to fee payers.

*200 Community Service/Charitable Activities*

Contributions or activities (i.e., benefit events or Local-sponsored volunteer activity) on behalf of community or charitable organizations.

---

Union of California State Workers
S.E.I.U. Local 1000

Notes to Statement of Operating Expenses by Activity and the
Allocation of Expenses between Chargeable, Non-Chargeable and Member-Only Benefits Expense
Year Ended December 31, 2004

*211 Other Activity (Non-Job Related)*

This is a miscellaneous category used only when none of the other more descriptive categories apply to an activity which affects the lives of Local-represented employees more as general citizens than as employees, because it did not involve their wages, hours, benefits, working conditions, employee rights or other matters pertinent to improving their work lives. Examples of these activities are participation in strike activity by other unions not directly involving Local-represented employees, and participation as a Local representative in meetings or conferences of organizations having no relationship to wages, hours, benefits, working conditions, development in public sector employment, labor relations, representational skills or other matters pertinent to the working lives of Local-represented employees.

*220-226, 245-248 Political Activity and the CSEA-MAC Activities*

This category of expenditure reflects the Local's participation in political activity, including management of the Political Action Fund, a separate fund not included in the general fund account. This Fund is financed by a portion of dues and fees set by the Local's Board of Directors. Members and fee payers who inform the Local in writing that they do not wish to make such contributions to the Fund are not required to do so. Uses of this Fund include contributions to selected political candidates for California state office and to support or oppose ballot measures and initiatives. Other political activity of the Local includes the coordination of volunteer work on behalf of any political organization or candidate for political office as well as research, analysis, writing, meetings, financial contributions and other advocacy regarding ballot initiatives supported or opposed by the Local.

Since fee payers who object to a portion of their fees being used for the Political Action Fund would have had their fees reduced by that amount, the amount collected and transferred to the Fund ($652,123) is not included in the percentage calculations in this report. The remainder ($1,139,841), which reflects political expenditures apart from the amount transferred to the Political Action Fund, is excluded from the fees of objecting fee payers and is included in the percentage calculations in this report.

*234 Other Publications (Non-Job Related)*

*243 Screening and Watching Legislation*

Initial screening and analysis of legislation to determine whether the Local will take a position on it, and continued monitoring of legislation on which the Local has taken a "watch" position.

Left page (13):

Union of California State Workers
S.E.I.U. Local 1000

Notes to Statement of Operating Expenses by Activity and the
Allocation of Expenses between Chargeable, Non-Chargeable and Member-Only Benefits Expense
Year Ended December 31, 2004

*244 Legislative Activities Not Tied to Particular Legislation*

Legislative meetings or contacts not concerned with particular legislation, but undertaken for the purpose of enhancing the Local's general effectiveness in the Legislature. Any meetings involving political action activities or support of particular legislators are included in activities 220-226 and 245-248.

*270 Member Death Benefits*

All costs of providing, promoting and administering the Local's member death benefits program.

*271/282 Member-Only Insurance Benefits*

The Local provides numerous opportunities for members to participate in insurance programs. The cost of plan administration is reimbursed by insurance carriers.

c.  Partially Chargeable/Non-Chargeable (Allocation methodology Note 3a)

*230 Bargaining Unit Publications*

*231 Newsline, Leadership Letters and Other Communiqués*

This activity includes all costs associated with leadership letters and any other reports or communiqués of a general nature concerning a variety of subject matters which are directed at Local-represented employees or leadership.

*232/236 Public and Media Relations, Website*

This activity includes all costs of the Local's media relations and public relations activities (including such matters as the distribution of leaflets, website maintenance, demonstrations, speeches, advertisements and press releases directed toward members of the general public) on matters not devoted to contract proposals, negotiations, ratification, or CSEA-MAC or other political activities.

*233 Other Publications (Job Related)*

This activity includes the production of publications (i.e., reports, brochures or handbooks – whether on a single subject or multiple subjects) that concern the wages, hours, benefits, working conditions or other employee rights of Local-represented employees, but do not relate to a single subject matter covered by one of the other activities.

13

Right page (14):

Union of California State Workers
S.E.I.U. Local 1000

Notes to Statement of Operating Expenses by Activity and the
Allocation of Expenses between Chargeable, Non-Chargeable and Member-Only Benefits Expense
Year Ended December 31, 2004

Case 2:05-cv-02198-MCE Document 1 Filed 11/01/05 Page 27 of 40

*254 DLC/Region Meetings, Administration and Leadership Training*

The Local has District Labor Councils (DLCs) throughout the state that receive a portion of the Local's dues revenue for funding of state employee representation at the local level. Typical activities of the DLCs include newsletters to inform employees of local decisions at committee and Board meetings, preparation of proposals for bargaining, preparation for the ratification decision, creation of job steward committees and social gatherings. This activity includes the cost of all DLC and region meetings, the administration of DLCs (including monthly dues allocations) and the region and training of DLC and regional officers.

*256/257 SEIU and Other Labor Affiliate Meetings and Activities*

The Local participates in meetings and activities of its international affiliate, the Service Employees International Union (SEIU), and other regional labor organizations affiliated with the SEIU (e.g., the SEIU State Council), with which the Local is also affiliated. This activity includes the cost of affiliation fees, which are used on a variety of activities including research and staff assistance to local affiliates such as the Local on bargaining, contract enforcement, field representation, organizing, and union governance. The SEIU also uses these fees for numerous other activities and expenditures such as its affiliation fees to the AFL-CIO, political activities, organizing, publications and administrative expenses.

*260 General Administration*

Includes staff meetings, discussion and staff memoranda of a general nature, including staff personnel matters, staff training (to the extent not on a single subject covered by another activity), and typical administrative matters such as opening mail.

*261 Accounting/Financial Management*

Administration of the Local's financial affairs, including budgeting, cost analysis, planning and control, computer systems development, accounting, payroll, record keeping and data processing.

*263 Other Administrative Expenses/Office and Equipment Services*

Other administrative matters not covered in activities 260-262, including expenses related to the provision of office space, office supplies, corporate insurance, the switchboard, in-house mail delivery and messengers; legal representation (including litigation) regarding the Local's leases, contracts and other obligations with respect to third parties; dealings with the State Employees Building Corporation; the purchase, assignment and maintenance of vehicles and other equipment, and any other office or equipment matters.

14

Union of California State Workers
S.E.I.U. Local 1000

Notes to Statement of Operating Expenses by Activity and the
Allocation of Expenses between Chargeable, Non-Chargeable and Member-Only Benefits Expense
Year Ended December 31, 2004

Allocation of Expenses between Chargeable, Non-Chargeable and Member-Only Benefits Expense

Other affiliated group expenditures are not audited by a Certified Public Accountant and are therefore considered non-chargeable to objecting fee payers.

| Expenditures | Total Expenses | Chargeable Expenses | Non-Chargeable Expenses | Member-Only Benefits Expense |
|---|---|---|---|---|
| SEIU International | $14,256,420 | $3,508,505 | $10,747,915 | $ 19? |
| Other affiliated groups | 2,196,837 | | 2,196,837 | |
| | $16,453,257 | $3,508,505 | $12,944,752 | $ 10,??8 |

260, 261, 263 General Administration, Accounting and Administrative Expense

General administration, accounting and administrative expenses are primarily allocated based on the ratio of the combined total of chargeable, non-chargeable and member only benefits expenses for all other activity codes which require administrative attention.

16

---

Union of California State Workers
S.E.I.U. Local 1000

Notes to Statement of Operating Expenses by Activity and the
Allocation of Expenses between Chargeable, Non-Chargeable and Member-Only Benefits Expense
Year Ended December 31, 2004

Note 3 – Significant Factors and Assumptions Used in the Allocation of Direct and Indirect Divisional Expenses for the Computation of Chargeable and Non-Chargeable Expenditures:

a. Allocation – Specific Activity Codes

230, 231, 232, 233, 236 Publications, Letters, Communiqués, & Public Relations

Based upon a review of the content of publications produced within these activity codes, an allowance of 40.13% of the Local's costs are non-chargeable to reflect the portion of the publications pertaining to activities that would not be chargeable to objecting fee payers.

254 DLC/Region Meetings, Administration & Leadership Training

The financial information of the Local's DLCs has been audited by an external Certified Public Accountant. All expenditures allocated to these DLCs have been classified as chargeable and non-chargeable based on these audits. The expenditures of any DLCs that were not audited were classified as non-chargeable to objecting fee payers.

b. Allocation – Specific Activity Codes

256/257 SEIU and Other Labor Affiliate Meetings and Activities

A portion of the Local's affiliation expenditures is considered to be non-chargeable to reflect the portions of the SEIU International's expenditures and expenditures paid to other affiliated groups that may be considered to be non-chargeable to objecting fee payers. Based upon an analysis prepared by the SEIU and audited by a Certified Public Accountant, it was concluded that 75.39% of the SEIU International's expenditures were non-chargeable to objecting fee payers. The Local has applied the same 75.39% to its SEIU International expenditures.

15

**TOAL & GRIFFITH, LLC**
CERTIFIED PUBLIC ACCOUNTANTS

200 HARRY S. TRUMAN PARKWAY, STE. 110
ANNAPOLIS, MARYLAND 21401
Voice: (410) 224-0043, Facsimile: (410) 224-0043

## Independent Auditor's Report

The Executive Board of the
Service Employees International Union, AFL-CIO, CLC.

We have audited the accompanying consolidated statement of expenses and allocation between chargeable expenses and non-chargeable expenses alternative basis of allocation of the Service Employees International Union, AFL-CIO, CLC - United States Division (the International Union) for the year ended December 31, 2003. This consolidated statement is the responsibility of the International Union's management. Our responsibility is to express an opinion on this consolidated statement based on our audit. We did not audit the total expenses reflected in Column A of the consolidated financial statements. Total expenses were audited by other auditors whose report has been furnished to us, and our opinion, insofar as it relates to the amounts in Column A, is based solely on the report of the other auditors.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the consolidated statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the statement. An audit also includes assessing the accounting principles used and significant estimates made by the International Union's management, as well as evaluating the overall presentation of the consolidated statement. We believe that our audit provides a reasonable basis for our opinion.

The total expenses reflected in Column A of the consolidated statement agree to the expenses in the audited consolidated financial statement of the International Union for the year ended December 31, 2003, as modified to remove from expenses the per capita tax rebates paid to local unions of $10,204,666, political expenses paid from voluntary contributions of $2,349,224 and expenses associated with the Eastern and Western Conferences amounting to $336,875, which were paid from funds transferred upon the dissolution of the Eastern Conference affiliate. The allocation of expenses between chargeable (Column B) and non-chargeable (Column C) is based on the definitions and significant factors and assumptions described in Notes 2 and 3.

In our opinion, the consolidated statement referred to above present fairly, in all material respects, the consolidated expenses of the Service Employees International Union, AFL-CIO, CLC - United States Division for the year ended December 31, 2003, modified as discussed in the preceding paragraph and the allocated consolidated expenses between chargeable and non-chargeable expenses, on the basis of the definitions and significant factors and assumptions described in Notes 2 and 3.

This report is intended solely for the information and use of the Service Employees International Union, AFL-CIO, CLC and its agency fee payers and is not intended to be and should not be used by anyone other than these specified parties.

*[signature]*

October 29, 2004

17

---

SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, CLC
UNITED STATES DIVISION

CONSOLIDATED STATEMENT OF EXPENSE AND
ALLOCATION BETWEEN CHARGEABLE
EXPENSES AND NON-CHARGEABLE EXPENSES
ALTERNATIVE BASIS OF ALLOCATION

YEAR ENDED DECEMBER 31, 2003

| | Column A Total Expenses | Column B Chargeable Expenses | Column C Non-Chargeable Expenses | Notes |
|---|---|---|---|---|
| **GENERAL FUND** | | | | |
| Personnel costs | | | | |
| Organizing | $ 25,070,260 | $ 8,838,146 | $ 25,070,290 | 3a |
| Organizing campaign support | 10,970,866 | - | 2,132,720 | 3a |
| Politics, governmental, and community | 2,453,781 | - | 2,453,781 | 3a |
| Union communications | 5,084,529 | 2,476,316 | 2,608,213 | 3a |
| Leader support | 6,177,604 | 3,054,987 | 759,657 | 3a |
| Administrative and financial services | 4,417,970 | 3,351,788 | 1,108,162 | 3a |
| Professional fees and expenses | 8,859,044 | 4,819,767 | 3,849,277 | 3b |
| Administrative expenses | 9,634,164 | 3,606,858 | 8,025,206 | 3c |
| Contributions | 2,111,182 | - | 2,111,182 | 3c |
| Payments to locals | | | | |
| Subsidies | 6,613,612 | - | 6,613,612 | 3e |
| Per capita tax rebates | 10,204,666 | 19,204,966 | - | 3e |
| Reimbursements | 985,772 | 985,772 | - | 3f |
| Political subsidies | 1,493,105 | - | 1,493,105 | 3f |
| Conferences and meetings | 3,654,696 | 649,751 | 3,014,947 | 3g |
| Communications and media | 887,241 | 424,948 | 442,293 | 3h |
| Special projects | (5,185) | (5,185) | - | 3i |
| Affiliation fees and assessments | 10,004,911 | - | 10,004,911 | 3j |
| Death gratuities | 122,833 | - | 122,833 | 3j |
| Building expenses | 3,793,165 | 1,420,920 | 2,372,245 | 3k |
| Member telephone calls and visibility | 799,888 | - | 799,888 | 3m |
| State Council reform | 778,114 | 778,114 | - | 3n |
| **Total General Fund** | 114,487,090 | 43,508,946 | 70,980,142 | |
| STRIKE AND DEFENSE FUNDS | 6,435,572 | 6,435,572 | - | 3o |
| POLITICAL EDUCATION AND ACTION FUNDS | 7,700,055 | - | 7,794,055 | 3o |
| COMMITTEE ON POLITICAL EDUCATION | 2,349,224 | - | 2,349,224 | 3p |
| UNITY FUND | 43,400,147 | 155,468 | 43,400,147 | 3q |
| CONVENTION FUND | 155,468 | - | 155,468 | 3r |
| LEGAL DEFENSE FUND | 29,945 | - | 29,945 | 3s |
| CONFERENCE FUND EXPENSES | 336,875 | 326,875 | - | 3n |
| **Total expenses before modification** | 174,978,376 | 50,424,863 | 124,353,513 | |
| **LESS** | | | | |
| Per capita tax rebate payments to locals | (10,204,666) | (10,204,666) | - | |
| Political expenses paid from voluntary contributions | (2,349,224) | - | (2,349,224) | |
| Conference Fund expenses | (336,875) | (326,875) | - | |
| **Total expenses, as modified** | $ 162,097,611 | $ 39,893,322 | $ 122,004,289 | |
| | 100% | 24.61% | 73.38% | |

18

SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, CLC
UNITED STATES DIVISION
NOTES TO CONSOLIDATED STATEMENT OF EXPENSES AND
ALLOCATION BETWEEN CHARGEABLE EXPENSES
AND NON-CHARGEABLE EXPENSES -
ALTERNATIVE BASIS OF ALLOCATION
DECEMBER 31, 2003

NOTE 1 - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES - CONTINUED

Convention Fund - Records all activities for the convention of the International Union which meets every four years.

Other Funds - Established to account for assets which have been internally segregated for specific purposes as determining by the Executive Board.

Depreciation and Amortization - Depreciation and amortization of property, equipment, and improvements are computed over the estimated lives of the respective assets using the straight-line method.

Tax Status - The International Union is exempt from federal income taxes, except on net income, they, from unrelated business activities, under Section 501(c)(5) of the Internal Revenue Code. 1313 L Street is exempt from income tax, except on net income, if any, from unrelated business activities, under Section 501(c)(2) of the Internal Revenue Code.

NOTE 2 - DEFINITIONS

The following definitions of chargeable and non-chargeable expenses are based on existing law and the International Union's interpretation of court cases.

a. Chargeable Expenses - Chargeable expenses are those incurred by the International Union that reflect the share of the costs of operations of the International Union which are considered necessarily and reasonably incurred for the purpose of assisting local unions and councils in the performance of their duties as a representative of the employees in dealing with the employer on labor management issues, including the costs of: negotiating and administering the collective bargaining contract; settling grievances and disputes by mutual agreement, or in arbitration, or otherwise; activities and undertakings normally and reasonably employed to implement the duties of the local union or council as representative of the employees in the bargaining unit, and the maintenance of the International Union's, local unions' and councils' existence. The following are examples of expenditures classified as chargeable: preparation for and negotiation of collective bargaining agreements; contract administration including investigating and processing grievances; meetings, conferences, administrative, arbitral and court proceedings and pertinent investigation and research in connection with work-related subjects and issues; handling work-related problems of employees; and providing legal, economic, and technical expertise on behalf of employees in all work-related matters.

20

SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, CLC
UNITED STATES DIVISION
NOTES TO CONSOLIDATED STATEMENT OF EXPENSES AND
ALLOCATION BETWEEN CHARGEABLE EXPENSES AND
AND NON-CHARGEABLE EXPENSES -
ALTERNATIVE BASIS OF ALLOCATION
DECEMBER 31, 2003

NOTE 1 - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

Method of Accounting - The financial statement has been prepared on the accrual basis of accounting in accordance with generally accepted accounting principles.

Basis of Presentation - The accompanying consolidated statement of expenses and allocation between chargeable expenses and non-chargeable expenses was prepared for the purpose of determining the fair share cost of services rendered by the Service Employees International Union, ALF-CIO - United States Division (the International Union) for employees represented by, but not members of, the International Union and its affiliated local unions. This statement is not intended to be a complete presentation of the International Union's financial position, or changes in its net assets and its cash flows in accordance with generally accepted accounting principles. Under the alternative basis of allocation, which has been required by certain jurisdictions, organizing expenses are to be considered to be non-chargeable.

Financial Statement Presentation and Principles of Consolidation - The International Union records its transactions in various funds, each a self-balancing group of accounts. Each fund reflects only those transactions applicable to its designated functional area. The following fund designations are established by the International Union's Constitution or determined by management:

General Fund - Records all activity not accounted for in the other funds and includes the general operations of the International Union - U.S. Division and the operations of 1313 L Street, N. W., Inc. (1313 L Street), a not-for-profit corporation formed to be a title holding corporation for the International Union's headquarters building. The General Fund includes the consolidated accounts of 1313 L Street. All significant intercompany account balances have been eliminated in consolidation.

Strike and Defense Funds - Established to financially assist local unions and members involved in strikes. In accordance with the International Union's constitution, local unions may withdraw their per capita payments from the Strike and Defense Local Fund after one year of making per capita payments.

Political Education and Action Funds (PEA) - Records all activities for political education and political action disbursed from per capita tax allocations.

Committee on Political Education - Records all activities for political contributions disbursed from net assets received with donor imposed restrictions.

Unity Fund - The Unity Fund is a segregated fund financed from local union per capita payments that is used to finance AbreakthroughE campaigns, coordinated bargaining, and other activities designed to increase density in SEIU's core industries. The Unity Fund is divided among the Building Service, Health Care, and Public Services Divisions and a discretionary fund.

19

SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, CLC
UNITED STATES DIVISION
NOTES TO CONSOLIDATED STATEMENT OF EXPENSES AND
ALLOCATION BETWEEN CHARGEABLE EXPENSES
AND NON-CHARGEABLE EXPENSES -
ALTERNATIVE BASIS OF ALLOCATION
DECEMBER 31, 2003

NOTE 2 - DEFINITIONS - CONTINUED

b. Non-Chargeable Expenses - Non-chargeable expenses are those expenses incurred by the International Union for the benefit and advancement of represented employees and their union which are not considered representational activities for non-members. Non-chargeable activities include those services that are ideological or political in nature; those that are exclusively for the benefit of full union members; and those that otherwise are not considered germane to the collective bargaining process.

Activities that are classified as non-chargeable include the following: organizing, legislative and government activities outside the limited context of contract ratification for implementation, public relations and other efforts directed towards functional activities that are not considered germane to representing non-members in the collective bargaining process; political activity expenses which include support at the Federal, state, or local level; union publications to the extent they report on a labor non-administrative or non-representational activities; donations; affiliation fees paid to a labor organization; and the cost of benefits that are not available to non-members.

NOTE 3 - SIGNIFICANT FACTORS AND ASSUMPTIONS USED IN THE ALLOCATION OF CONSOLIDATED EXPENSES BETWEEN CHARGEABLE AND NON-CHARGEABLE

a. Personnel Costs - The International Union has assigned all personnel to either program, leader support, or administrative and financial services departments. Program departments implement the programs of the International Union and provide services to affiliates and local unions. Administrative and financial services departments include the following departments: Accounting, Human Resources, Information and Technology, Meetings and Convention, Member Services, and Finance and General Administration. Leader support includes the Executive Department, the Executive Board, and the Firemen and Oilers Department. Personnel costs include salaries and wages, fringe benefits, payroll taxes, and reimbursed employee expenses.

Personnel costs of the organizing departments, field operations and campaign support departments, politics, government, and community departments, Union communications departments, leader support departments and the administrative and financial services departments have been allocated based on determinations made by the various department heads as to the percentage of time his or her department spends on chargeable and non-chargeable activities. The personnel costs of office and clerical personnel are allocated between chargeable and non-chargeable in the same percentage as their supervisors.

21

SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, CLC
UNITED STATES DIVISION
NOTES TO CONSOLIDATED STATEMENT OF EXPENSES AND
ALLOCATION BETWEEN CHARGEABLE EXPENSES
AND NON-CHARGEABLE EXPENSES
ALTERNATIVE BASIS OF ALLOCATION
DECEMBER 31, 2003

NOTE 3 - SIGNIFICANT FACTORS AND ASSUMPTIONS USED IN THE ALLOCATION OF CONSOLIDATED EXPENSES BETWEEN CHARGEABLE AND NON-CHARGEABLE - CONTINUED

b. Professional Fees and Expenses - All professional fees and expenses for outside legal counsel are considered to be chargeable or non-chargeable based on the services performed. Accounting and auditing fees and expenses are considered to be fully chargeable. Other professional fees and expenses are considered to be chargeable or non-chargeable based on the service performed by the consultant. Chargeable activities include expenses for training, speakers, and research matters. Professional fees for consulting services in connection with organizing campaigns, political activities and legislative activities are considered to be fully non-chargeable.

c. Administrative Expenses - Administrative expenses include items such as rent and utilities, office supplies and expenses, investment charges, equipment rental and maintenance, computer expenses, other taxes, depreciation and amortization, printing, postage, telephone, subscriptions, insurance, and bad debt expense. These expenses are allocated to chargeable and non-chargeable expenses based on the same ratio as personnel costs.

d. Contributions - Contributions for charitable, civic, and labor-related purposes are not directly related to the function of representation and are considered to be fully non-chargeable.

e. Payments to Locals - Payments to locals which represent subsidies for organizing are considered to be fully non-chargeable. Payments to locals which represent reimbursements for operating expenses are considered to be fully chargeable. The total expenses as reported in the related consolidated financial statement have been modified to remove from expenses the per capita tax rebates paid to local unions.

f. Political Subsidies - Political subsidies are considered to be fully non-chargeable.

g. Conferences and Meetings - Expenses for conferences and meetings are allocated between chargeable expenses and non-chargeable expenses based on the purpose of and topics discussed at the meetings. Items of a political, legislative, or organizing nature are considered to be non-chargeable. Educational training programs and conferences which are to enhance skills in collective bargaining, grievance handling, and contract administration are considered to be fully chargeable since they pertain to matters which are germane to collective bargaining. Executive Board meetings and meetings which pertain to the governance of the International Union such as formulating and communicating union internal policy are considered to be fully chargeable.

22

SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, CLC
UNITED STATES DIVISION
NOTES TO CONSOLIDATED STATEMENT OF EXPENSES AND
ALLOCATION BETWEEN CHARGEABLE EXPENSES AND
AND NON-CHARGEABLE EXPENSES -
ALTERNATIVE BASIS OF ALLOCATION
DECEMBER 31, 2003

NOTE 3 - SIGNIFICANT FACTORS AND ASSUMPTIONS USED IN THE ALLOCATION OF CONSOLIDATED EXPENSES BETWEEN CHARGEABLE AND NON-CHARGEABLE - CONTINUED

p. Political Education and Action Funds - Expenses incurred by the Committee on Political Education and the Political Education and Action Funds relate entirely to political and legislative activities, are considered to be fully non-chargeable. The total expenses as reported in the audited consolidated financial statement have been modified to remove from expenses the political expenses paid from voluntary contributions.

q. Unity Fund - Expenses of the Unity Fund include financial assistance to local unions involved in breakthrough campaigns to increase union membership. These expenses are organizing function and are considered to be fully non-chargeable.

r. Convention Fund - Expenses for the International Union's convention are considered to be fully chargeable.

s. Legal Defense Fund - Expenses incurred by the Legal Defense Fund are considered to be fully chargeable.

t. Eastern Conference Fund - Expenses incurred within this Fund are paid from funds transferred upon the dissolution of the Eastern Conference and are accordingly removed from the total expenses.

24

---

SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, CLC
UNITED STATES DIVISION
NOTES TO CONSOLIDATED STATEMENT OF EXPENSES AND
ALLOCATION BETWEEN CHARGEABLE EXPENSES
AND NON-CHARGEABLE EXPENSES -
ALTERNATIVE BASIS OF ALLOCATION
DECEMBER 31, 2003

NOTE 3 - SIGNIFICANT FACTORS AND ASSUMPTIONS USED IN THE ALLOCATION OF CONSOLIDATED EXPENSES BETWEEN CHARGEABLE AND NON-CHARGEABLE - CONTINUED

h. Communications and Media - Direct printing and publishing expenses of the publications are allocated based on the specific content of articles in the publications such as the International Union's magazine, SEIU Action, which is distributed to all members and agency fee payers and the newsletter, Bold Action Fax. Expenses allocable to articles considered to be political or ideological in nature are considered non-chargeable. Expenses allocable to reporting on legislative and lobbying activities, litigation activities, illegal strike activities, organizing and articles relating to enhancement of the reputation of the International Union as a whole are considered to be non-chargeable. The content of articles deemed chargeable are directly related to issues on collective bargaining and contract administration. These articles include topics such as collective bargaining contracts negotiated by locals throughout the country. The expenses relating to the maintenance of the International Unions website have been allocated based on an assessment of the content included on the website throughout the year.

i. Special Projects - Special projects are considered to be chargeable or non-chargeable based on an analysis of the nature of the special project conducted.

j. Affiliation Fees and Assessments - Per capita taxes and assessments paid to the AFL-CIO and affiliated labor organizations are considered to be fully non-chargeable.

k. Death Gratuities - Death gratuities are benefits paid to a deceased member's family and are considered to be fully non-chargeable.

l. Building Expenses - This category represents expenses incurred by 1313 L Street for the operation and maintenance of the International Union's headquarters building, such as utilities, real estate taxes, insurance, repairs and maintenance and other related expenses. These expenses are allocated to chargeable and non-chargeable expenses based on the same ratio as personnel costs.

m. Member Telephone Calls and Visibility - These expenses are considered to be fully non-chargeable.

n. Regional Conferences and Joint Council Meetings - The International Union returns a portion of per capita taxes received from the local unions to the International Union's councils for regional conferences and joint council meetings. These governance meetings are considered to be fully chargeable.

o. Strike and Defense Funds - Expenses of the strike and defense funds include financial assistance to local unions involved in legitimate strikes in addition to providing financial assistance for educational programs including newspaper advertisements, leaflets, handbills, and other media-based messages concerning contract ratification. Expenses also include local union withdrawals of their per capita tax payments. All expenses of the strike and defense funds are considered to be fully chargeable.

23

**SEIU LOCAL 1000**
1108 O Street
Sacramento, CA 95814

PRESORTED
FIRST CLASS MAIL
US POSTAGE PAID
SACRAMENTO, CA
PERMIT NO. 498

# MEMBERSHIP
# APPLICATION
# ENCLOSED

\*\*\*\*\*\*\*\*\*\*AUTO\*\*5-DIGIT 95828
THOMAS J HASS
8216 DANBURY PARK CT
SACRAMENTO CA  95828-6162



**LOCAL 1000, CSEA**

**SEIU**
**Stronger Together**

August 31, 2005

Dear Local 1000 Members and Fair Share Fee Payers,

On Saturday, August 27, Local 1000 delegates voted overwhelmingly for a temporary dues increase to create a Political Fight Back Fund. Over 320 delegates publicly endorsed the establishment of the fund prior to the vote. The fund will pay for advertising, mail, voter registration, voter education, and get out the vote activities to beat the Governor's anti-public employee agenda.

We will use this fund to defeat Proposition 76 and Proposition 75 on November 8. In June 2006, we'll have to defeat another attack on our pension plan. In November 2006, we need to elect a governor and a legislature who support public employees and the services we provide.

JIM HARD
President

CATHY HACKETT
Vice President
and Secretary-Treasurer

MARC BAUTISTA
Vice President
for Organizing/Representation

RON LANDINGHAM
Vice President for Bargaining

The action by the delegates increases the regular membership dues in an amount equal to .0025 (two and one-half tenths of one percent) of gross wages during the pay periods between September 1, 2005 and December 31, 2006. The $45 per month cap on our regular dues of 1% of gross pay will continue in effect, but will not apply to this additional .0025 temporary increase.

The delegates also approved an emergency temporary increase in the dues paid by permanent intermittent employees from $8 per month to $15 per month. This increase also will be in effect during the pay periods between September 1, 2005 and December 31, 2006. Fair Share fees will rise by .002478 of gross monthly salary.

All major public employee unions are taking similar action.

With this temporary dues increase we have the financial resources needed to win this fight for our future. Now each of us must take the next step.

- Make sure your co-workers, families, friends and neighbors are registered and get out to vote.
- Stay informed – go to www.seiu1000.org regularly, read the Union Update every Wednesday, and call the union hotline at 866-356 0160.
- Sign up to volunteer for phone banking, precinct-walking and other activities between now and November 8.
- Apply now for a personal day off on November 8, and spend Election Day working on this critical fight.

SERVICE EMPLOYEES
INTERNATIONAL UNION
CSEA

Working together, we can win!

1108 O Street
Sacramento, CA 95814
(916) 444-8134
(916) 326-4215 (fax)
www.seiu1000.org

*Jim Hard*
JIM HARD
President

*Marc Bautista*
MARC BAUTISTA
Vice President for Organizing/Representation

*Cathy Hackett*
CATHY HACKETT
Vice President and Secretary-Treasurer

*Ron Landingham*
RON LANDINGHAM
Vice President for Bargaining



PLAINTIFF'S
EXHIBIT
D

1              **VERIFICATION OF COMPLAINT**

2

3              Dianne Knox, pursuant to Section 1746 of the Judicial Code, 28 U.S.C. § 1746, declares as

4    follows:

5              I am named as a Plaintiff in the within suit and am employed by the State of California. I am

6    not a member of Defendant California State Employees Association, Local 1000, Service Employees

7    International Union ("CSEA").

8              I have read the foregoing Complaint, and state upon my knowledge, information, and belief

9    that the statements and allegations contained herein are true and correct.

10             As stated more fully in the Complaint, Defendant Westly has seized increased agency fees from

11   my wages for the benefit of CSEA, and solely for nonchargeable political and ideological purposes,

12   resulting in a forced loan from me that will be spent on the ballot propositions and other political and

13   nonbargaining activities to which I object.

14             I declare under penalty of perjury that the foregoing is true and correct.

15             Executed on 27 October 2005.

16                                                           _Dianne Knox_

17                                                           DIANNE KNOX

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION OF COMPLAINT**

Robert A. Conover, pursuant to Section 1746 of the Judicial Code, 28 U.S.C. § 1746, declares as follows:

I am named as a Plaintiff in the within suit and am employed by the State of California. I am not a member of Defendant California State Employees Association, Local 1000, Service Employees International Union ("CSEA").

I have read the foregoing Complaint, and state upon my knowledge, information, and belief that the statements and allegations contained herein are true and correct.

As stated more fully in the Complaint, I have previously been a member of Defendant CSEA, but resigned from union membership shortly after 1 October 2005. I anticipate that Defendant Westly will seize increased agency fees from my wages for the benefit of CSEA, and solely for nonchargeable political and ideological purposes, resulting in a forced loan from me that will be spent on the ballot propositions and other political and nonbargaining activities to which I object.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _28_ October 2005.

ROBERT A. CONOVER

1    **VERIFICATION OF COMPLAINT**

2

3       Edward L. Dobrowolski, Jr., pursuant to Section 1746 of the Judicial Code, 28 U.S.C. § 1746,

4    declares as follows:

5       I am named as a Plaintiff in the within suit and am employed by the State of California.  I am

6    not a member of Defendant California State Employees Association, Local 1000, Service Employees

7    International Union ("CSEA").

8       I have read the foregoing Complaint, and state upon my knowledge, information, and belief

9    that the statements and allegations contained herein are true and correct.

10      As stated more fully in the Complaint, Defendant Westly has seized increased agency fees from

11   my wages for the benefit of CSEA, and solely for nonchargeable political and ideological purposes,

12   resulting in a forced loan from me that will be spent on the ballot propositions and other political and

13   nonbargaining activities to which I object.

14      I declare under penalty of perjury that the foregoing is true and correct.

15      Executed on 27 October 2005.

16

17                                              EDWARD L. DOBROWOLSKI, JR.

18

19

20

21

22

23

24

25

26

27

28

1                                VERIFICATION OF COMPLAINT

2

3         Karyn Gil, pursuant to Section 1746 of the Judicial Code, 28 U.S.C. § 1746, declares as

4    follows:

5         I am named as a Plaintiff in the within suit and am employed by the State of California. I am

6    not a member of Defendant California State Employees Association, Local 1000, Service Employees

7    International Union ("CSEA").

8         I have read the foregoing Complaint, and state upon my knowledge, information, and belief

9    that the statements and allegations contained herein are true and correct.

10        As stated more fully in the Complaint, Defendant Westly has seized increased agency fees from

11   my wages for the benefit of CSEA, and solely for nonchargeable political and ideological purposes,

12   resulting in a forced loan from me that will be spent on the ballot propositions and other political and

13   nonbargaining activities to which I object.

14        I declare under penalty of perjury that the foregoing is true and correct.

15        Executed on $\overline{31}$ October 2005.

16

17                                                                    KARYN GIL

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION OF COMPLAINT**

1

2

3   Patrick Johnson, pursuant to Section 1746 of the Judicial Code, 28 U.S.C. § 1746, declares as
4   follows:

5   I am named as a Plaintiff in the within suit and am employed by the State of California. I am
6   not a member of Defendant California State Employees Association, Local 1000, Service Employees
7   International Union ("CSEA").

8   I have read the foregoing Complaint, and state upon my knowledge, information, and belief
9   that the statements and allegations contained herein are true and correct.

10   As stated more fully in the Complaint, Defendant Westly has seized increased agency fees from
11   my wages for the benefit of CSEA, and solely for nonchargeable political and ideological purposes,
12   resulting in a forced loan from me that will be spent on the ballot propositions and other political and
13   nonbargaining activities to which I object.

14   I declare under penalty of perjury that the foregoing is true and correct.

15   Executed on 28 October 2005.

16

17                                                     PATRICK JOHNSON

18

19

20

21

22

23

24

25

26

27

28

1    **VERIFICATION OF COMPLAINT**

2

3        R. Paul Ricker, pursuant to Section 1746 of the Judicial Code, 28 U.S.C. § 1746, declares as

4    follows:

5        I am named as a Plaintiff in the within suit and am employed by the State of California. I am

6    not a member of Defendant California State Employees Association, Local 1000, Service Employees

7    International Union ("CSEA").

8        I have read the foregoing Complaint, and state upon my knowledge, information, and belief

9    that the statements and allegations contained herein are true and correct.

10       As stated more fully in the Complaint, CSEA has collected full union dues, including a recent

11   25% increase, from my wages, solely for nonchargeable political and ideological purposes, resulting in

12   a forced loan from me that will be spent on the ballot propositions and other political and

13   nonbargaining activities to which I object.

14       I declare under penalty of perjury that the foregoing is true and correct.

15       Executed on 24 October 2005.

16

17                         R. PAUL RICKER

18

19

20

21

22

23

24

25

26

27

28