UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DIANNE KNOX; WILLIAM L. BLAYLOCK; ROBERT A. CONOVER; EDWARD L. DOBROWOLSKI, JR.; KARYN GIL; THOMAS JACOB HASS; PATRICK JOHNSON; and JON JUMPER, On Behalf of Themselves and the Class They Seek to Represent,

       Plaintiffs,

    v.

STEVE WESTLY, Controller, State of California; and CALIFORNIA STATE EMPLOYEES ASSOCIATION, LOCAL 1000, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO-CLC,

       Defendants.

No. 2:05-cv-2198-MCE-KJM

MEMORANDUM AND ORDER

----oo0oo----

Through the present action, Plaintiffs, state employees, seek redress against Defendants Steve Westly and California State Employees Association, Local 1000, Service Employees International Union, AFL-CIO, CLC ("CSEA" or "the Union").

1

Plaintiffs allege that Defendants violated their First, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 by, *inter alia*, using Plaintiffs' monies to support political causes without satisfying the procedural safeguards compelled by *Chicago Teachers Union v. Hudson*, 475 U.S. 292 (1986).

Before the Court is Defendant's Motion for Summary Judgment. For the reasons stated below, Defendant's Motion is DENIED.

## BACKGROUND

The Court has already set forth a partial factual background for this action in its Order dated August 15, 2006, which is incorporated by reference herein. Mem. & Order 2-4, August 15, 2006. In addition to that background, the following facts are salient to the present inquiry. On or about July 30, 2005, Defendants proposed an "Emergency Temporary Assessment to Build a Political Fight-Back Fund" for use on "a broad range of political expenses, including television and radio advertising, direct mail, voter registration, voter education, and get out the vote activities in our work sites and in our communities across California." Clerk's Docket No. 1, Exhibit A. The proposal further clarified that "The funds from this emergency temporary assessment will be used *specifically in the political arenas of California* to defend and advance the interests of members of Local 1000 and the important public services they provide." *Id.* (emphasis added).

///

///

2

The proposal went on to explain that "The Fund will not be used for regular costs of the union - such as office rent, staff salaries or routine equipment replacement, etc." *Id.* As opposed to being used on regular costs of the union, the Fight Back Fund was targeted primarily at defeating certain ballot propositions in a special election which was held on November 8, 2005. The temporary assessment was scheduled to terminate on December 31, 2006. Def. Stmt. of Undisp. Facts, ¶ 20. In total, the temporary assessment was expected to raise approximately $12,000,000 in additional capital for CSEA's use. *Id.* ¶ 21.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. *See* Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); *see also Allstate Ins. Co. v. Madan*, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).

3

1  The standard that applies to a motion for summary
2 adjudication is the same as that which applies to a motion for
3 summary judgment.  *See* Fed. R. Civ. P. 56(a), 56(c); *Mora v.*
4 *ChemTronics*, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

5  Under summary judgment practice, the moving party
    always bears the initial responsibility of informing
6   the district court of the basis for its motion, and
    identifying those portions of 'the pleadings,
7   depositions, answers to interrogatories, and admissions
    on file together with the affidavits, if any,' which it
8   believes demonstrate the absence of a genuine issue of
    material fact.
9

10 *Celotex Corp. v. Catrett*, 477 U.S. at 323 (quoting Rule 56(c)).
11  If the moving party meets its initial responsibility, the
12 burden then shifts to the opposing party to establish that a
13 genuine issue as to any material fact actually does exist.
14 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
15 585-87 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S.
16 253, 288-89 (1968).
17  In attempting to establish the existence of this factual
18 dispute, the opposing party must tender evidence of specific
19 facts in the form of affidavits, and/or admissible discovery
20 material, in support of its contention that the dispute exists.
21 Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that
22 the fact in contention is material, i.e., a fact that might
23 affect the outcome of the suit under the governing law, and that
24 the dispute is genuine, i.e., the evidence is such that a
25 reasonable jury could return a verdict for the nonmoving party.
26 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251-52
27 (1986); *Owens v. Local No. 169, Assoc. of W. Pulp and Paper*
28 *Workers*, 971 F.2d 347, 355 (9th Cir. 1987).

4

Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

**ANALYSIS**

Plaintiffs central contention is that CSEA imposed a twenty five to thirty five percent increase in nonmember state workers' agency fees without satisfying the requisite constitutional protections inherent in the First and Fourteenth Amendments.

5

For support, Plaintiffs rely on *Chi. Teachers Union, Local No. 1, AFT, AFL-CIO, et. al., v. Hudson, et. al.*, wherein the Supreme Court balanced the right of a union to require every employee to contribute to the cost of collective-bargaining activities against the right of objecting nonmembers to be free from compulsory subsidization of ideological activities with which they disagree. *Id.* at 303 (citing *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 237 (1977).

In striking that balance, the Court articulated at least three fundamental requirements that must be met in order to protect the constitutional rights and interests of both unions and individuals. Specifically, in order for a union to constitutionally seize funds from nonmember workers, the union must provide an adequate explanation of the basis for the fee, must provide a reasonably prompt opportunity to challenge the amount of the fee before an impartial decision maker, and place in escrow the amounts reasonably in dispute while such challenges are pending. *Hudson*, 475 U.S. at 310.

Here, CSEA provided Plaintiffs with a notice of proposed dues for 2005-2006 on June 30, 2005 ("June Hudson Notice"). That notice did not expressly set forth the special assessment later imposed on all state workers, including Plaintiff nonunion state workers. The question raised by the imposition of this special assessment is whether the June Hudson Notice was sufficient to satisfy the Hudson procedural safeguards as to the special assessment or whether an additional safeguard in the form of a mid-year Hudson notice was required given the unusual nature and magnitude of the assessment.

6

When the Court first analyzed this issue, it was in the context of a preliminary injunction which is an extraordinary remedy, and places on Plaintiffs the burden of proving the propriety of such a remedy by clear and convincing evidence. *See Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 442 (1974). In light of the extreme remedy sought, the Court found that Plaintiffs failed to show that the balance of hardships tipped sharply in favor of granting the requested injunction. The Plaintiff's Motion was, accordingly, denied.

As noted above, the Court is presently considering a Motion for Summary Judgment brought by the Defendants. In this context, the Court is operating under a different standard than that presented by Plaintiffs' earlier Motion for Temporary Restraining Order and/or Preliminary Injunction. Rather than Plaintiffs bearing the burden of showing the hardships tip sharply in their favor warranting the extreme remedy of injunction, Defendants now bear the burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings which it believes demonstrate the absence of a genuine issue of material fact and entitle them to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**A.   Constitutional Safeguards**

Plaintiffs assert that the June Hudson Notice was constitutionally infirm because the special assessment constituted a twenty five to thirty six percent fee increase without an opportunity to object to this increase.

7

1  Plaintiffs go on to argue that given the Union's express intent
2  to use the special assessment for the sole purpose of speaking to
3  political issues, their First Amendment rights have been
4  abridged.
5       CSEA rebuts that *Hudson* does not require additional notice
6  for a mid-year change in agency fees.  CSEA further avers that
7  *Hudson*, together with Ninth Circuit precedent, requires unions'
8  yearly notices be based on proposed expenditures computed from
9  the prior year's audited figures.  CSEA expressly claims there is
10 no mandate whatsoever that Hudson notice disclosures be based on
11 projected expenditures.  In addition, CSEA objects to Plaintiffs'
12 contention that the Special Assessment was purely for political
13 purposes.  Rather, CSEA contends some of the assessment was
14 expended for purposes chargeable to all state workers whether
15 union members or not.  This being the case, CSEA argues that it,
16 too, has a right to speak and mandating a mid-year Hudson notice
17 impermissibly abridges that right.
18      The Court first notes that CSEA's position is largely
19 grounded in a footnote contained in the seminal *Hudson* case where
20 the Supreme Court recognized that "...there are practical reasons
21 why absolute precision in the calculation of the charge to
22 nonmembers cannot be expected or required." *Hudson*, 475 U.S. at
23 307, n. 18.  CSEA contends the foregoing footnote expressly
24 permits an increase in dues, no matter the percentage in that
25 increase, without further adherence to the procedural safeguards
26 so carefully crafted in *Hudson* and its progeny.  The Court
27 disagrees.
28 ///

8

While footnote 18 wisely recognizes that a union cannot, with "absolute precision," forecast sums that will ultimately be charged in a succeeding year, this accession does not efface the procedural edict so deliberately charged in *Hudson*. Specifically, that nonunion members receive:  1) an adequate explanation of the basis for fair share fees collected, 2) a reasonably prompt opportunity to challenge the amount of the fee before an impartial decision maker, and 3) that disputed funds be placed in escrow while such challenges are pending.  *Id.* at 310.

Additionally, footnote 18 itself recognizes that although a union need not provide members with an exhaustive and detailed list of all its expenditures, an adequate disclosure surely would include the major categories of expenses.  *Id.* at 307.  The special assessment here, exacted against all state workers without explanation, without an opportunity to object and without an escrow to hold disputed sums, ultimately resulted in $12,000,000 of additional revenue for CSEA.  To the extent that sum was expended "in the political arenas of California to defend and advance the interests of members of Local 1000," it is certainly a major category of expense.

To the extent CSEA argues the June Hudson Notice satisfied the later twenty five to thirty five percent increase in fair share fee payers' dues, the Court finds otherwise.

///
///
///
///
///

9

1  First, the Supreme Court has warned "the Union should not be
2  permitted to exact a service fee from nonmembers without first
3  establishing a procedure which will *avoid the risk* that their
4  funds will be used, even temporarily, to finance ideological
5  activities unrelated to collective bargaining." *Id.* at 305
6  (citing *Abood*, 431 U.S. at 244.)  The Court further explained
7  that the interest in not being compelled to subsidize the
8  propagation of political or ideological views one opposes is
9  clear.  *Hudson*, 475 U.S. at 305.  The Court emphasized the point
10 by quoting comments of Thomas Jefferson and James Madison
11 regarding the "tyrannical character of forcing an individual to
12 contribute even 'three pence' for the 'propagation of opinions
13 which he disbelieves.'" *Id.* (internal quotations omitted).
14      Here, CSEA extracted a material increase in fair share fees
15 from nonmember state workers, at least in part, for the
16 propagation of opinions with which many disbelieved without
17 providing them an opportunity to object nor to be heard before a
18 neutral decision maker.  The Court can hardly describe the June
19 Hudson Notice as sufficient to address the First Amendment
20 concerns raised by a twenty five to thirty five percent special
21 assessment imposed mid-year and resulting in a $12,000,000
22 Political Fight Back Fund.
23      CSEA contends the constitutional balance struck in *Hudson*
24 and clarified in footnote 18 permits it to collect fees from
25 nonmember state workers and remit those nonchargeable sums in the
26 subsequent year.  The Court does not read *Hudson* so broadly.  In
27 fact, *Hudson* stated quite the opposite when the Court explained
28 that, "a pure rebate approach is inadequate."  *Id.* at 303-304.

10

1  The Court went on to provide that "[U]nder ... a [rebate]
2  approach, in which the union refunds to the nonunion employee any
3  money to which the union was not entitled, the union obtains an
4  involuntary loan for purposes to which the employee objects."
5  *Id.* (internal citations and quotations omitted).  Accordingly,
6  while practical limitations foreclose absolute precision in a
7  Hudson notice, the facts of the present case are far more aligned
8  with a "pure rebate approach" than the mild variance contemplated
9  by footnote 18.
10     The fact that the involuntary extraction of sums by CSEA
11 from nonmember state workers implicates rights protected by the
12 First Amendment requires that the procedure for protecting those
13 rights be "carefully tailored to minimize any possible
14 infringement."  *Id.* at 303.  The Court will reserve judgment as
15 to whether CSEA's procedure with respect to the special
16 assessment can be described as being "carefully tailored" and
17 calculated to mitigate the possibility of violating Plaintiffs'
18 First Amendment rights as that question is not here presented.
19 However, the Court is presented with the question of whether CSEA
20 has provided sufficient reason why it should prevail in this
21 action as a matter of law.  The Court finds that it has not.
22 Accordingly, CSEA's Motion for Summary Judgment is DENIED.
23 *///*
24 *///*
25 *///*
26 *///*
27 *///*
28 *///*

**CONCLUSION**

For the reasons set forth above, CSEA's Motion for Summary Judgment is denied.

IT IS SO ORDERED.

Dated: February 12, 2007

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

12