UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANNE KNOX, et al., on behalf of themselves and the classes they represent,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN CHIANG, Controller, State of California, et al.,<br><br>Defendants. | No. 2:05-CV-02198-MCE-CMK<br><br>**MEMORANDUM AND ORDER** |

Through this action, Plaintiffs, state employees, sought redress from Defendants Controller of the State of California John Chiang and Service Employees International Union, Local 1000 ("SEIU") (collectively "Defendants") for violations of Plaintiffs' First, Fifth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. Plaintiffs alleged, and the Supreme Court of the United States ultimately held, that Defendants used Plaintiffs' monies to support political causes without satisfying constitutionally required procedural safeguards. Following entry of judgment, Plaintiffs were awarded attorney's fees and expenses. Presently before the Court is Plaintiffs' Motion for Supplemental Attorney's Fees ("Motion"). For the reasons set forth below, Plaintiffs' Motion is denied.[1]

---

[1] Because oral argument will not be of material assistance, the Court orders these matters submitted on the briefs. E.D. Cal. Local R. 230(g).

# BACKGROUND[2]

In June 2005, Defendant SEIU sent out its regular Hudson notice informing employees what the agency fee would be for the year ahead. See Teachers v. Hudson, 475 U.S. 292 (1986). The notice set monthly dues at 1% of an employee's gross monthly salary but capped monthly dues at $45. Based on the most recently audited year, SEIU estimated that 56.35% of its total expenditures in the coming year would be dedicated to chargeable collective-bargaining activities. Thus, if a nonunion employee objected within 30 days to payment of the full amount of union dues, the objecting employee was required to pay only 56.35% of total dues. SEIU's notice also included a feature that was not present in Hudson: The notice stated that the agency fee was subject to increase at any time without further notice.

During this time, the citizens of the State of California were engaged in a wide-ranging political debate regarding state budget deficits and, in particular, the budget consequences of growing compensation for public employees backed by powerful public-sector unions. On June 13, 2005, Governor Arnold Schwarzenegger called for a special election to be held in November 2005 where voters would consider various ballot propositions aimed at state-level structural reforms. SEIU joined a coalition of public-sector unions in vigorously opposing various measures. Calling itself the "Alliance for a Better California," the group would eventually raise "more than $10 million, with almost all of it coming from public employee unions, including $2.75 million from state workers unions, $4.7 million from the California Teachers Association, and $700,000 from school workers unions."

On July 30, shortly after the end of the thirty-day objection period for the June Hudson notice, SEIU proposed a temporary 25% increase in employee fees, which it billed as an "Emergency Temporary Assessment to Build a Political Fight-Back Fund."

---

[2] The following recitation of facts is taken, sometimes verbatim, from the Supreme Court's opinion in this case. Knox v. Serv. Employees Int'l Union, Local 1000, 132 S. Ct. 2277, 2285-86 (2012).

The proposal stated that the money was needed to achieve the union's political objectives, both in the special November 2005 election and in the November 2006 election. On August 27, SEIU's General Council voted to implement the proposal. On August 31, SEIU sent out a letter addressed to "Local 1000 Members and Fair Share Fee Payers," announcing that, for a limited period, their fees would be raised to 1.25% of gross monthly salary and the $45-per-month cap on regular dues would not apply.

After receiving this letter, one of the Plaintiffs in this case called SEIU's offices to complain that the union was levying the special assessment for political purposes without giving employees a fair opportunity to object. One of SEIU's area managers responded that "even if [the employee] objected to the payment of the full agency fee, there was nothing he could do about the September increase for the Assessment." ECF No. 139. "She also stated that 'we are in the fight of our lives,' that the Assessment was needed, and that there was nothing that could be done to stop the Union's expenditure of that Assessment for political purposes." Id. As a consolation, however, those employees who had filed timely objections after the regular June Hudson notice were required to pay only 56.35% of the temporary increase.

Plaintiffs filed this class-action suit on behalf of 28,000 nonunion employees who were forced to contribute money to the Political Fight-Back Fund. On March 28, 2008, this Court issued an order granting summary judgment to Plaintiffs and granting in part Defendants' cross-motion for partial summary judgment. ECF No. 139. Defendants appealed, and the Ninth Circuit reversed and remanded. 628 F.3d 1115 (9th Cir. 2010). In accordance with the Ninth Circuit's opinion, this Court then issued an order denying Plaintiffs' motion for summary judgment and reversing the denial of Defendants' partial motion for summary judgment. ECF No. 178. Plaintiffs then appealed, and the Supreme Court of the United States granted certiorari. 131 S. Ct. 3061 (2011). The Supreme Court reversed and remanded the Ninth Circuit's decision. 132 S. Ct. 2277, 2284 (2012). The Ninth Circuit then vacated this Court's decision in its entirety and remanded the case to this Court for further proceedings consistent with the Supreme Court's

opinion. ECF No. 183.  On December 4, 2012, this Court entered judgment in favor of Plaintiffs and ordered that SEIU shall refund to Plaintiffs all monies exacted for the Emergency Temporary Assessment to Build a Political Fight-Back Fund, for the entirety of the period during which the assessment was exacted, plus interest.  ECF No. 190.  On June 5, 2013, this Court granted Plaintiffs' motion for attorney's fees, awarding Plaintiffs $1,021,176.00 in attorney's fees and $15,412.93 in expenses.  ECF No. 216.  Plaintiffs now petition the Court for supplemental attorney's fees.  ECF No. 223.

**STANDARD**

The Civil Rights Attorney's Fees Awards Act of 1976 permits the award of attorney's fees in civil rights actions.  42 U.S.C. § 1988.  The statute provides, in pertinent part: "In any action or proceeding to enforce a provision of [42 U.S.C. § 1983] . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Id. § 1988(b).  A "prevailing party" under § 1988 is a party who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  "Reasonableness" is the benchmark for attorney's fees awards under § 1988.  42 U.S.C. § 1988(b); Hensley, 461 U.S. at 433.

The Federal Rules of Civil Procedure[3] provide that a party moving for attorney's fees must "state the amount sought or provide a fair estimate of it." Fed. R. Civ. P. 54(d)(2)(B)(iii).  The Rules further dictate that "[u]nless a statute or a court order provides otherwise, the motion must . . . be filed no later than 14 days after the entry of judgment . . . ." Fed. R. Civ. P. 54(d)(2)(B)(i).  Local Rule 293(a) of the United States District Court for the Eastern District of California extends the time for filing of a motion to 28 days after entry of final judgment.  E.D. Cal. Local R. 293(a).

---

[3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

4

**ANALYSIS**

In accordance with the Court's judgment, SEIU issued refunds totaling $4,839,277.73 to a total of 42,149 members. ECF No. 223 at 2.[4]  Additionally, SEIU was ordered to pay Plaintiffs $1,021,176.00 in attorney's fees and $15,412.93 in expenses. ECF No. 216 at 26.  Plaintiffs now contend that they are entitled to an award of supplemental attorney's fees, in the amount of $33,412.50, for 74.25 hours expended relating to distribution of the judgment proceeds. ECF No. 223 at 2.  Plaintiffs base their request on the "virtual deluge of telephone calls, e-mails, and regular mail inquiries regarding the refunds being distributed, raising a variety of questions." Id.

Under Local Rule 293(a), a motion for attorney's fees must be filed no later than 28 days after entry of final judgment. E.D. Cal. Local R. 293(a).  Judgment was entered for Plaintiffs on December 4, 2012. ECF No. 190.  Plaintiffs filed the instant motion on February 6, 2014, well beyond 28 days following the entry of judgment. ECF No. 223. Nonetheless, Plaintiffs contend their motion was timely filed because it was filed "well before the twenty-eighth (28th) day after entry of the Court's Minute Order closing the case." Id. at 2.  As SEIU correctly indicates, however, in Plaintiffs' original motion for attorney's fees, they refer to the Court's December 4, 2012 Order as the entry of judgment. ECF No. 192 at 8.  Further, Rule 54(a) defines 'judgment' as "a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a).  The Court's Minute Order simply closed the case and is not an appealable order; judgment was entered on December 4, 2012. ECF No. 190.  Accordingly, Plaintiffs' assertion that the Court's Minute Order is the final entry of judgment lacks merit, and Plaintiffs' Motion is untimely.

"Although 'the 14-day period is not jurisdictional, the failure to comply [with Rule 54] should be sufficient reason to deny the fee motion, absent some compelling showing of good cause.'" Yeager v. AT&T Mobility, LLC, 2:07-cv-02517-KJM-GGH, 2013 WL 4676755 at *5 (E.D. Cal. Aug. 30, 2013) (quoting Kona Enters., Inc. v. Estate of Bishop,

---

[4] Unless otherwise indicated, all page citations are to the ECF assigned page numbers.


1   229 F.3d 877, 889-90 (9th Cir. 2000)).  Plaintiffs contend that good cause is satisfied "by
2   the sheer realities of the situation," and that it is "self-evidently unreasonable to suggest
3   that the Nonmembers could have predicted, with any degree of certitude, the time
4   necessary to monitor distribution of the judgment proceeds . . . ."  ECF No. 226 at 3.  As
5   Plaintiffs' assertions clearly demonstrate, however, apart from arguing that the attorney's
6   fees are necessary due to the amount of work expended, Plaintiffs have done nothing to
7   show good cause for failing to timely file a supplemental request for attorney's fees.  In
8   Gonzalez v. Bratton, 247 F. Supp. 2d 432, 434-35 (S.D.N.Y. 2003), the court granted a
9   request for fees filed four months after the original motion for attorney's fees.  Notably,
10  the request for supplemental fees in Gonzalez pertained to work performed by the
11  plaintiff in response to the defendants' failure to diligently comply with the court's orders.
12  Id. at 435.  Such is not the case here.
13          Plaintiffs are correct that post-judgment monitoring of a consent decree is a
14  compensable activity for which counsel is entitled to a reasonable fee.  See Keith v.
15  Volpe, 833 F.2d 850, 855-56 (9th Cir. 1987) (citing several circuits holding that post-
16  judgment monitoring of consent decrees in the context of the Civil Rights Attorney's Fees
17  Awards Act entitles counsel to a reasonable fee).  In Keith, the parties reached a
18  settlement that involved a consent decree providing for a large scale housing program,
19  affirmative action and job training programs, and an environmentally sensitive design for
20  a highway.  Id. at 852.  The remedy afforded Plaintiffs in this case is of a wholly different
21  nature.  As opposed to a decree providing for a major development project, which would
22  undoubtedly require monitoring to ensure compliance with the terms of the decree,
23  Plaintiffs were granted money damages.  Moreover, although Plaintiffs argue that the
24  parties and the Court anticipated a monitoring function by Plaintiffs' counsel, the Court's
25  order stated that SEIU is to make reports to the Court.  ECF No. 190 at 3.  There is no
26  mention of Plaintiffs' counsel performing a monitoring function.  Id.
27  ///
28  ///

Because the remedy is altogether different, and because there was no monitoring function on the part of Plaintiffs' counsel contemplated by the Court, this case is distinguishable from those relied on by Plaintiffs.

Finally, as one district court stated, "If Plaintiff wished to seek fees for the time spent responding to the reply in her initial motion, Rule 54 provides such a mechanism by allowing a party to provide a fair estimate for the amount of fees sought." Miracle Gash v. Client Servs., Inc., 12-cv-01426-LTB-MJW, 2013 WL 1130717, at *4 (D. Colo. Mar. 18, 2013). Plaintiffs argue that it would be unreasonable to suggest that Plaintiffs' counsel could predict the amount of time necessary to monitor distribution of the judgment proceeds. ECF No. 226 at 3. Notwithstanding the fact that the Court's Order did not provide for monitoring by Plaintiffs' counsel, Plaintiffs' later arguments are inconsistent with this point. For example, Plaintiffs argue that monitoring distribution and answering questions from absent class members was "wholly consistent with—if not mandated by—the Nonmembers' counsel's duties as class counsel." Id. at 8-9. If, as Plaintiffs assert, it was counsel's duty to provide these services, they certainly should have been reasonably expected. Further, as ordered by the Court, each refund sent by SEIU to each Plaintiff included a letter, drafted and signed by Plaintiffs' counsel. ECF No. 190 at 3; ECF No. 226-1 at 1-2. This letter explains the distribution scheme and indicates that should any Plaintiff have questions about the case or their refund, they should contact Plaintiffs' counsel. ECF No. 226-1 at 1-2. Clearly, counsel expected that Plaintiffs would have questions regarding the refunds, and specifically directed that those questions be directed to counsel. Plaintiffs, as indicated in Miracle Gash, could have provided a fair estimate of these fees in a timely request for attorney's fees. Plaintiffs fail to adequately explain why, in light of these facts, the instant motion comes over one year beyond both entry of judgment and the initial request for fees.

While the Court is sympathetic to the fact that Plaintiffs' counsel expended additional time answering the requests of various class members, there is a need for litigation to come to an end. Rule 54 provides a mechanism by which a party can

provide an estimate for the amount of fees sought, yet Plaintiff failed to do so and instead filed the instant motion well beyond the time required under Local Rule 293(a). Plaintiffs fail to show good cause for why their untimely request for attorney's fees should be granted. Accordingly, Plaintiffs' Motion must be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs Supplemental Motion for Attorney's Fees (ECF No. 223) is DENIED.

IT IS SO ORDERED.

Dated:  April 16, 2014

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT